## 5826.  ATLANTIC COAST LINE RAILROAD COMPANY v. CHASTAIN.

Where the killing of the plaintiff's cow by a train of the defendant was shown, and the plaintiff relied entirely upon the legal presumption of negligence against the railroad company, a recovery was authorized unless this presumption was fully overcome by proof. Where there were seeming conflicts or contradictions, as to material facts in the case, between the opinionative testimony of the defendant's engineer and the physical facts as disclosed by his testimony, and where the owner of the cow testified that the railroad-track was straight for several hundred yards from where the cow was killed, back toward Albany, and that the train coming from Albany had killed the cow, and that the right of way of the railroad company at this point was such that the cow could have been readily seen for several hundred yards by the engineer of the train, and where it appeared from the testimony of the engineer, who sought to explain the killing and to show the absence of negligence, that he made no effort to stop the train, because he thought it impossible to do so, and that, although he saw the cow when it was 50 or 60 yards distant, it was so close that, in his judgment, it was impossible for him to do anything toward stopping the train before reaching the point where the cow was, and that he did not blow the whistle, or cut off the steam, or make any attempt to keep from hitting the cow, because when he first saw the cow he thought it useless to make an effort to keep from striking it, *held*, that it was for the jury to determine whether the explanation offered in behalf of the defendant completely rebutted the presumption of negligence created by the killing of the cow; and they might legitimately have concluded that the explanation of the killing was insufficient; the credibility of the witnesses as well as the question of negligence being exclusively for them.

Decided February 3, 1915.

Certiorari; from Thomas superior court—Judge Thomas.   May 16, 1914.

*Bennet & Branch, J. H. Merrill,* for plaintiff in error.

*Fondren Mitchell,* contra.

BROYLES, J.   S. A. Chastain sued the Atlantic Coast Line Railroad Company in a justice's court for the value of a cow killed by the running of one of its trains.   The jury found a verdict in his favor, which, upon certiorari, was sustained by the judge of the superior court; and the defendant excepted to the judgment overruling the certiorari.   The only question involved is whether, under the facts and the law applicable thereto, the recovery was authorized.   It is insisted by the plaintiff in error that the presumption of negligence raised by the killing was fully rebutted by the evidence of its engineer, who testified, that he was the engineer operating the train that killed the cow; that at the time the cow was struck it was about dark,—a little after six o'clock on November 6, 1912; that he was running his engine on the regular passenger-train from Albany to Thomasville; that the engine was equipped with the best headlight in regular use on passenger-trains, and that by its light he could have seen from 15 to 20 feet beyond the sides of the track; that as he was approaching this place his fireman was firing the engine and was not looking out; that he (the engineer) was sitting on the engineer's seat and was looking out, but did not see the cow until the engine was from within 50 or 60 yards of her, and it was so close that, in his judgment, it was impossible for him to do anything toward stopping the train before he got to where the cow was; that he made no effort to stop the train, because he thought it was impossible to do so; nor did he blow his whistle, or cut off his steam, or make any attempt to keep from hitting the cow, because, when he saw the cow, he thought it useless to make an effort to keep from hitting it; that when he saw the cow she was not where the engine could have struck her, but that after reaching the end of his run—Thomasville—he discovered cow-hair on one of the projecting parts of the engine, and the next morning, as he was going up on his run, he saw the cow lying on the track, and was satisfied that the projecting part of his engine had killed her.   S. A. Chastain, owner of the cow, testified that the defendant's track was straight for several hundred yards from the point where the cow was killed, back toward Albany;

that the train which killed the cow was coming from Albany; and that the right of way of the defendant at this point was such that the cow could have been readily seen for several hundred yards by the engineer of the train going toward Thomasville. The defendant waived any issue as to the fact that the cow was killed by the running of the train, that it was worth the amount of the judgment, that it was owned by the plaintiff, or as to anything else testified by the plaintiff, and assigned error solely upon the ground that, under the circumstances as outlined by the testimony of the engineer, the defendant was not liable for the killing of the cow.

The facts in the instant case are different from those in any of the cases cited by the learned counsel for plaintiff in error. In the case of *Macon & Augusta R. Co.* v. *Vaughn*, 48 *Ga.* 465, it appeared affirmatively from the evidence, without contradiction, that there was no negligence or want of care on the part of the railroad company. There a mule was killed by the railroad company, and the Supreme Court said: "The evidence of the absence of any negligence in running the train, at the moment of the killing of this mule, is very strong, and is wholly uncontradicted. . . It was night, and the engineer testifies positively to the use of the greatest care. A railroad company is not liable for an unavoidable accident, even under our statute in relation to stock. If, with every reasonable precaution, proper lookout, proper speed and proper attention, an unavoidable damage ensues, a company which has by law a right, under such precautions, to run its trains, is not responsible." In *Georgia Southern & Florida R. Co.* v. *Sanders*, 111 *Ga.* 128 (36 S. E. 458), the cow came *suddenly* upon the track, in front of the engine, and the engineer *put on his brakes*, and otherwise used all ordinary care and reasonable diligence to stop the train. In *Macon, Dublin & Savannah R. Co.* v. *Hamilton*, 9 *Ga. App.* 254 (70 S. E. 1126), a cow grazing near the railroad-track suddenly ran on the track, a *few feet* in front of the engine, which was running at a speed of from 25 to 30 miles an hour, and was killed. The undisputed evidence of the engineer and the fireman in that case fully rebutted the statutory presumption of negligence. In *Macon & Birmingham R. Co.* v. *Revis*, 119 *Ga.* 332 (46 S. E. 418), the train was running 35 or 40 miles an hour, and the engineer first saw the horse about 25 or 30 feet from the track. The horse suddenly walked to the edge of a cut and jumped down upon

the track. The engineer immediately *shut off steam, applied his emergency brakes* and *sounded the "cattle alarm,"* but all to no avail. And the court held in that case that the presumption of negligence was fully rebutted. In *Macon, Dublin & Savannah R. Co.* v. *Wood,* 3 *Ga. App.* 197 (59 S. E. 595), a mule was hit *just at the time he got upon the track,* and the engineer *checked the engine* and *applied the emergency brakes.* He could not see the mule, because of a cut and scrub trees growing on each side of the cut, and because he was sitting on the right of the engine and the mule came from the left; it was struck the moment he saw it. In *Macon, Dublin & Savannah R. Co.* v. *Barfield,* 10 *Ga. App.* 104 (72 S. E. 936), the engineer testified that he was so *close* upon the mule before he discovered it that he could *not* have stopped his train in time to prevent striking it, and yet he *threw on the brakes, sounded the "cattle-alarm"* and, *slackened the speed* of the train; and Judge Powell said: "The testimony of the engineer that he threw on brakes and brought about a slackening of the speed of the train, and that he sounded the 'cattle alarm,' related to the res gestæ of the transaction." In *Georgia R. Co.* v. *Wall,* 80 *Ga.* 202 (7 S. E. 639), the testimony was that the train was going down-grade, and some mules were seen upon the track, about 40 yards ahead, and the engineer *applied the brakes* and *blew the whistle.* This was early in the morning, before daylight, and a fog was prevailing at the time, which prevented the mules from being seen at a greater distance. In *Western & Atlantic R. Co.* v. *Trimmier,* 84 *Ga.* 112 (10 S. E. 503), the Supreme Court said, "the railroad company showed by its witnesses, who were uncontradicted, that they saw the cow a little distance off from the track when the train was running down-grade, and very rapidly; that the cow turned and came upon the track, and that everything was done that they could do to prevent the injury, but that it was impossible to stop the train in time to prevent it." In the *Augusta Southern R. Co.* v. *Carroll,* 7 *Ga. App.* 138 (66 S. E. 403), a horse and a colt were grazing about 50 yards from a cut in the track, and as the train (running about 30 to 35 miles an hour) got a little nearer to the horse, the engineer testified, it raised its head and started toward the track, and, immediately upon seeing this, he applied the emergency brakes, reversed the engine, and reached for the whistle-cord, but, before he could get it, another employee of the company, upon the

engine, had commenced sounding the cattle-alarm, and continued to do so. It is true that in all of these cases cited, where the engineer put on his brakes, blew his whistle and sounded the cattle-alarm, the killing of the cow, or other animal, was not prevented; if it had been there would have been no case brought. On the other hand, there is no record of, and no means of knowing, how many hundreds or thousands of cows, mules and horses *have* been "headed off," and prevented from being killed, by similar prompt, precautionary and reasonable acts of diligence by railroad engineers.

Of all the cases in the reports which we have been able to find, we think that of *Western & Atlantic R. Co.* v. *Smith, 15 Ga. App.* 289 (82 S. E. 906), is most nearly "on all fours" with the instant case. In that case the fireman of the defendant testified that he first saw the cow when it was *twenty-five or thirty feet* distant from the train, coming from behind some cars which were standing on the third or fourth track from that on which the train was running, and that he did not have time, from the moment he saw the cow until she was hit, to tell the engineer to stop, or to apply brakes, and that in fact no brakes were applied, no bell was rung, no whistle blown, and no effort was made to stop the train, because he did not *think* it necessary, and nothing was done to prevent the accident. The engineer in that case testified that he was sitting on his engineer's box on the right of the engine, and that he did not see the cow at all, and could not see it from where he was. The fireman also swore that the cow came from the left of the train, and that the train could not have been stopped in time to prevent the killing of the cow; and yet in that case this court held that, under the facts, "it was for the jury to determine whether or not the explanation offered in behalf of the defendant completely rebutted the presumption of negligence created by the killing of the cow; and they might legitimately have concluded that the explanation was insufficient; the credibility of the witnesses, as well as the question of negligence being exclusively for them." In *Central of Ga. Ry. Co.* v. *Harden, 113 Ga.* 456 (38 S. E. 950),—another "cow" case, the Supreme Court said: "It is a settled doctrine of this court that where a jury has passed upon a case, and there was evidence to support their finding, and that finding has been approved by the trial judge, in the absence of any error of law on the part of the trial judge, this court will not set aside the

verdict although satisfied that the preponderance of the evidence was against the finding made." About the only difference between the *Smith* case, supra, and the instant case is that in the former the engineer did not see the cow at all, and the fireman testified to the material facts, and there were apparent contradictions in his testimony, while in the case at bar the fireman did not see the cow, and the engineer testified to the material facts, and there were apparent contradictions between the opinionative parts of his testimony and the physical facts as disclosed by his testimony. In this case the engineer's statement that the cow was so close to the train when he first saw it (within fifty or sixty yards) that, in his judgment, it was impossible for him to do anything toward stopping the train before he "got to where the cow was," is, of course, a mere conclusion of the witness. He further swore that he made no effort to stop the train because he *thought* it impossible to do so; nor did he blow the whistle, or cut off the steam, or make any attempt to keep from hitting the cow, because when he saw the cow he *thought* it useless to make this effort. If the engineer had even blown his whistle (which, as shown by the physical facts, he could have done), this might have frightened the cow away and prevented the killing. In *Atlantic Coast Line R. Co.* v. *Whitaker,* 10 *Ga. App.* 207 (73 S. E. 34), the engineer testified that his train was running 35 or 40 miles an hour when he first saw the cow, about 50 yards from it and running toward the track, and that he immediately *applied the brakes* and *blew the whistle.* "I tried to head her off by blowing the whistle, but could not." "I put on the service brakes and checked the speed of my engine to about twenty miles an hour when I struck the cow. I did not have time to stop my engine." So we think that in the instant case the jury might reasonably have found that the engineer should at least have blown his whistle and "tried to head the cow off." Here the engineer, under circumstances almost similar to those in the *Whitaker* case, swore that he did nothing toward stopping the train, and did not even blow his whistle,—which might have prevented the accident by heading off the cow from the track. The engineer states he did nothing towards stopping the train because he *thought* it useless to make an effort to keep from hitting the cow. In our opinion, he should at least have made an *effort* to stop or slow up the train, or, as we have said before, he should at least have *blown his whistle* or

sounded the "cattle-alarm." The judgment of all men "born of woman" is fallible, and in an emergency, no matter what we think, we should make all efforts possible, even though we deem them useless, to prevent injury to another or to his property. How could the engineer know that if he blew a sharp blast upon his whistle the cow would not have been frightened away to safety?

We think, under the facts in this case, that it was a question for the jury whether the testimony for the defendant completely rebutted the presumption of negligence created by the killing of the cow; and the judgment overruling the certiorari is sustained.

*Judgment affirmed.*