6209.    SEABOARD AIR-LINE RAILWAY *v.* PARISH.

BROYLES, J. 1. In a suit against a railroad company for killing stock by the running of its locomotive and cars, where there was evidence that the animal had for some time been feeding near the track, that the track at this point was straight and the country flat, without any bushes or deep ravines, that when the animal started to cross the track the train did not slacken its speed, and that no whistle was blown or bell rung, it was a question for the jury to determine whether the railroad had successfully rebutted the presumption of negligence which arose after the animal had been killed by one of its trains. *Darien & Western R. Co.* v. *Thomas,* 125 *Ga.* 801 (54 S. E. 692); *Western & Atlantic R. Co.* v. *Smith,* 15 *Ga. App.* 289 (82 S. E. 906); *Atlantic Coast Line R. Co.* v. *Chastain,* 15 *Ga. App.* 707 (84 S. E. 167).

2. It was also for the jury to determine whether, under the facts of this case, the railroad company was negligent in having an unprotected and dangerous well, and whether such negligence was the proximate cause of the killing of the plaintiff's pig.

*Judgment affirmed. Wade, J., dissents.*
DECIDED JULY 30, 1915.

Certiorari; from Bryan superior court—Judge Sheppard. December 3, 1914.

Parish sued the Seaboard Air-Line Railway in a justice's court for $24.50 as damages on account of the "killing of one steer on July 30, 1914, valued at $20; the killing of one hog on August 4, 1914, of the value of $3; and the killing of one hog which was drowned on August 5, 1914, in the well of the Seaboard Air-Line Railway, valued at $1.50." On the trial of the case on appeal in the justice's court, the verdict was in favor of the plaintiff, for the full amount sued for. The defendant sued out certiorari, alleging that the verdict was contrary to law and to the evidence; the certiorari was overruled, and the defendant excepted.

From the plaintiff's evidence it appeared, that his steer and one of his hogs were killed by the defendant's train, and that he lost a pig which was found in a tank-well of the defendant, where it had been drowned; and that the animals were of the values alleged. He testified, that the condition of the well was such that hogs would drop through; they could get up on it; and there was a hole in the top which permitted stock to drop through into the well. Another witness testified: "I saw this steer of Mr. Parish's killed on the track by the train. I know about the hog being drowned in the well. There was a small hole there, where the planks that covered the well are not close together. . . Several cows were feeding on the right of way. The one that was killed was on the north side. It started across, and just as it got on the rail and was crossing, the engine hit it. The engine was coming east. The track was straight. The steer was on the left side; it was not on the engineer's side. It looked like the steer took a running start to cross and the engine hit it. It was feeding upon the embankment on the north side of the track, and started to cross just as the engine was up on it. I don't see how the engineer could have avoided hitting it, as the steer did not start to cross the track until the engine was in a few feet of it. The engine had already started to slow up at the station." The magistrate's answer adds that this witness testified that "The train did not slack up," and that the steer had been for some time feeding before the train hit it; that no whistle was blown or bell rung, and that the country round about there was flat, and there were no deep ravines.

The fireman and the engineer of the train testified for the defendant. The former testified: "I was fireman on the train that killed this steer on July 30 last. It was just on the other side of the trestle, west of Morrison. The train was coming east. The steer was on the left side—my side. The engineer's side is the right side. I was putting in fire, and when I got up and went to the gangway I saw this steer that was down in a little embankment feeding. It ran up the embankment and tried to get across the track. Just as it started across the engine hit it. The reason I did not see it before was because I was firing, putting in coal to run the engine. I could not see ahead while I was doing that. My duty is to watch out when I am not firing. I can't do both at the same time. I think there is bermuda grass growing on the track.

The animal, when I first saw it, looked like it was feeding down the embankment, and ran up and tried to cross. Just as it started to cross it was hit, before anything could be done." The engineer testified: "I was looking ahead and never did see the animal. It came on the track from the left side, the fireman's side, and the first I knew of it was when I hit it. For me to see something on the fireman's side I would have to be, I suppose, about 100 yards off, on account of the front part of the locomotive being between me and anything ahead of it on the other side. I had just started to slow up for the station." The magistrate's answer adds that the fireman testified that no bell was rung or whistle blown, that the track was straight, and there were no bushes or deep ravines, and that the engineer testified "to nearly the same."

*Anderson, Cann & Cann,* for plaintiff in error, cited: *Rogers* v. *Ga. R. Co.,* 100 *Ga.* 700; *Ga. & Ala. Ry. Co.* v. *Cook,* 114 *Ga.* 760; *Atlantic Coast Line R. Co.* v. *Waycross Electric Light Co.,* 123 *Ga.* 613 (2) ; *Central Ry. Co.* v. *Duggan,* 124 *Ga.* 493; *Augusta Southern R. Co.* v. *Carroll,* 7 *Ga. App.* 138; *Garner* v. *Town of East Point,* 7 *Ga. App.* 630.

*J. P. Dukes,* contra, cited *Darien &c. R. Co.* v. *Thomas,* 125 *Ga.* 801, and discussed cases cited above.