COZART et al. v. WESTERN NAT. BANK OF FT. WORTH.  (No. 8547.)

(Court of Civil Appeals of Texas. Ft. Worth. March 3, 1917. Rehearing Denied March 31, 1917.)

1. BANKS AND BANKING ⊙=154(9)—ACTION FOR DEPOSIT—JURY QUESTION—OWNERSHIP.

In an action to recover money deposited with defendant bank, the ownership of fund held a jury question.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 530–533.]

⊙=For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**2. BANKS AND BANKING ⟐154(9)—DEPOSIT — JURY QUESTION — REPRESENTATIONS REGARDING OWNERSHIP.**

Evidence that money deposited with defendant bank was credited to order of a proposed bank and that defendant's cashier so stated made it a jury question whether the money was deposited for the proposed bank or for individual benefit of the depositor.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 530–533.]

**3. BANKS AND BANKING ⟐131—DEPOSIT TO CREDIT OF THIRD PARTY — RELATIONSHIP CREATED.**

Ordinarily, where one person deposits money in a bank to the credit of another, the bank is a debtor of the designated principal, and not of the depositor.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 316–318, 333.]

**4. BANKS AND BANKING ⟐154(7)—DEPOSIT —EVIDENCE.**

In action to recover money deposited with defendant bank for credit of a proposed bank, evidence that six days after the deposit the depositor applied for a bank charter is admissible on question of his good faith in representing that deposit was for the proposed bank.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 522–525.]

**5. BANKS AND BANKING ⟐154(6)—DEPOSIT —RECOVERY—BURDEN OF PROOF.**

In action to recover a deposit in defendant bank for credit of a proposed bank, the defendant has the burden of proving that such proposed bank or its stockholders were not entitled to the fund in preference to the depositor, where defendant's cashier had recognized such fund as belonging to the proposed corporation.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 518–521.]

Appeal from District Court, Tarrant County; Ben M. Terrell, Judge.

Suit by T. A. Cozart and others against the Western National Bank of Ft. Worth. Judgment for defendant, and plaintiffs appeal. Reversed and remanded.

B. L. Agerton, of Ft. Worth, B. D. Dashiell, of Jacksonville, and M. C. H. Park, of Waco, for appellants. Miller & Miller, G. C. Johnson, and I. W. Stephens, all of Ft. Worth, for appellee.

BUCK, J. T. A. Cozart and 20 others filed this suit against the Western National Bank, alleging that they, together with one C. Thompson, and 10 others, contemplated the organization of a state bank to be located at Flynn, Tex., same to be known as the Citizens' State Bank, with a capitalization of $10,000; that to that end plaintiffs subscribed and paid to the contemplated stock of said bank the sum of $5,050, in amounts ranging from $50 to $500; that C. Thompson and the 10 others, who were not plaintiffs, did not pay the amounts subscribed by them; that the Citizens' State Bank was never organized, and its organization was abandoned, but that on or about February 1, 1911, in pursuance of their purpose of incorporating said bank, plaintiffs deposited and caused to be deposited in the defendant bank the sum of $1,500 in cash, and that said deposit was made in the bank of defendant for the use and benefit of plaintiffs, and to the credit of the Citizens' State Bank of Flynn, Tex.; that the amount so deposited was a part of the aggregate of $5,050 subscribed and paid by the plaintiffs for the purpose aforesaid, and that therefore plaintiffs were the owners of the amount so deposited, and have ever since been such owners; that plaintiff, T. A. Cozart, was elected president of the board of directors of the contemplated Citizens' State Bank of Flynn, and that after the abandonment of the contemplated organization of the Citizens' State Bank of Flynn said Cozart demanded of defendant, for the use and benefit of himself and his coplaintiffs, the $1,500 aforesaid, and that, in response to said demand, defendant bank acknowledged having the said $1,500 subject to check by proper officer of the Citizens' State Bank of Flynn, and stated that it was unable to advise just how that amount could be drawn, and that subsequently, to wit, March 27, 1911, the defendant refused to pay plaintiffs, or any of them, the foresaid $1,500, or any part thereof, and on said last-named date defendant for the first time asserted ownership of said $1,500. Wherefore plaintiffs prayed judgment.

Defendants, after general demurrer and general denial, pleaded that on February 1, 1911, C. Thompson was indebted to the defendant bank in the sum of $1,500 for money loaned, and applied to said bank for the extension of said loan, claiming that he was about to organize the Citizens' State Bank of Flynn under the laws of Texas, and that in order to organize said bank he would have to have the cash on hand in order to comply with the law and as a basis for the affidavit required to be made; that he proposed to the president of the defendant bank that, if the bank would grant the extension requested, he would place the $1,500 with the bank, being the money he had subscribed and paid in preparatory to the organization of said state bank, and would leave said deposit in said defendant bank without being subject to check until the organization of said state bank; that when said state bank was organized he would pay said indebtedness, it being represented by said Thompson that he was to be the managing officer of said state bank when organized. Relying upon these representations, and believing that said Thompson was acting in good faith, the defendant bank, through its president, agreed with said Thompson to grant the extension of credit requested, and for convenience and as a matter of accommodation to said Thompson placed said sum to the credit of said state bank thereafter to be organized, in the expectation and belief that same would be organized as represented by Thompson, and that the said Thompson would then promptly pay off said indebted-

ness through said state bank. It was further alleged that since said extension was granted defendant had learned· that Thompson falsely represented his intentions and purposes, with reference to the organization of said state bank, and that he was engaged in fraudulent schemes to obtain money and credit from the defendant on the false pretenses that he was about to organize said state bank; that while laboring under this deception the cashier of the defendant bank, in the absence of the president and without being informed of the terms of the loan or extension of loan made through the president, did telegraph to T. A. Cozart, on March 7, 1911, in terms substantially as claimed by plaintiffs; that by reason of the alleged bad faith and misrepresentations of C. Thompson defendant was caused to make the loan aforesaid. Defendant denied that any part of the $1,500 deposited with it had been subscribed and paid in by the plaintiffs, but that, if it should develop that any part of said amount was so paid in by plaintiffs, the defendant was ignorant of this fact when it had the transaction with Thompson, and believed said money had been subscribed and paid in by said Thompson, and defendant further alleged that plaintiffs and Thompson were a partnership, and that Thompson had been authorized by plaintiffs to organize for them, in connection with himself and others, said state bank, and to make the representations alleged to have been made by him to defendant. It was further alleged that, if defendant should be mistaken as to the purpose and intention of said Thompson to organize said state bank, and mistaken as to the alleged partnership relation between said Thompson and plaintiffs, yet the abandonment of the proposed organization occurred subsequent to the alleged misrepresentations made by Thompson, and that plaintiffs were estopped by reason of the premises. It was further alleged that the $1,500 deposited with defendant bank was furnished by the Citizens' Bank of Flynn, a private bank owned and controlled by said Thompson, and that the deposit in fact represented the money of said Thompson.

In a supplemental petition plaintiffs denied the allegations of defendant's answer, and excepted generally and specially thereto. Testimony having been introduced, the court instructed the jury peremptorily for defendant, and from the judgment in favor of defendant, plaintiffs appeal.

[1] Appellants' sixth assignment complains of said peremptory instruction, and we are of the opinion that the assignment should be sustained. We think the testimony of T. A. Cozart, and other evidence, certainly makes the question of whether the $1,500 was in fact the money of the plaintiffs, or of Thompson, at the time it was deposited with the defendant bank, at least issuable. Cozart testified that he paid $500 for himself and $100 for his baby girl, in money, for the purpose of forming the Citizens' State Bank; $500 for his brother, G. D. Cozart; $300 for J. H. Seale; $500 for Otho Youngblood; $200 for G. A. Shepherd; $200 for R. W. Kirkpatrick; $200 for L. E. Fifer; that he knew G. T. Rouse paid $200; that J. T. Douthitt gave his check for $500; and that Ed Watson and M. L. Watson gave a check for $200 each; J. D. Erwin, $200; D. W. Erwin, $100; W. C. House, $200; L. S. Wilmer, $50; E. F. Rollins, $200; Roy and Virgil Reed, $100 together; W. E. Reed, $100, etc. It is true that on cross-examination he testified that he was not certain that in all instances the checks given by the various proposed stockholders were actually paid; yet as to others he was certain. He further testified that some of those, at least, who had subscribed and paid their subscriptions had recovered out of a fund deposited in a Houston bank a certain proportion of the amount so subscribed. Still this partial modification of his testimony on direct examination would go rather to the weight than to its legal effect with reference to the cause of action pleaded, and would present a question of fact for the jury as to the right of any one plaintiff to recover his proportionate part of the fund deposited in the defendant bank.

·[2, 3] Moreover, the record presents a question of fact for the jury as to whether the $1,500 deposited in the defendant bank by Thompson was represented by Thompson to the president of the defendant bank to be his own money, or a part of the general fund raised from the subscriptions of the various proposed stockholders. The fact that the deposit was placed to the credit of the Citizens' State Bank of Flynn, and that the cashier of the defendant bank, in answer to a telegraphic inquiry made to said bank, informed T. A. Cozart, who was acting for and on behalf of himself and the other plaintiffs, that said $1,500 was subject to the check of the Citizens' State Bank, when such check was signed by the proper officer, raises an issue of fact for the jury's determination as to the understanding of the defendant and its managing officers as to the character of such fund and its ownership at the time of such deposit. Ordinarily, where one person deposits money in a bank to the credit of another, the relation of creditor and debtor arising will be between the designated principal and the bank, and not between the agent or depositor and the bank. 2 Michie on Banks & Banking, 893, § 119. It is true that in the instant case the designated principal was a proposed corporation, which was not in fact organized; yet the stockholders who had paid their subscriptions and whose money, in whole or in part, made up the deposit, would have an interest in the fund proportionate to the amount so contributed. The further fact that Mr. Eddleman, president of the defendant bank, testified that his understanding with Thompson was that the

$1,500 note extended should be paid by the Citizens' State Bank after its organization gives support to the contention that the deposit was in fact, as it purported to be, in favor of the Citizens' State Bank, to be organized, and consequently that the stockholders contributing to the fund would have an interest in such fund proportionate to their contributions. Furthermore, the evidence discloses that the deposit made in the defendant bank arising out of the transaction between said bank and Thompson was in the form of a draft drawn on a Houston Bank by A. M. Beeman, cashier of the Citizens' Bank of Flynn, and the elected cashier of the proposed Citizens' State Bank of Flynn, and was made payable to the order of the Citizens' State Bank, indorsed by the Citizens' State Bank, "A. M. Beeman, Cashier." This draft was paid by the Houston bank, through the clearing house, and defendant credited the Citizens' State Bank therewith, as heretofore stated. This is another circumstance tending to show notice to the defendant bank of the interest of the plaintiff stockholders in the $1,500 deposited. It is a further circumstance that O. P. Haney, cashier of the defendant bank, testified that up to the time this controversy arose he had not been informed by Mr. Eddleman, the president, of any understanding between said Eddleman and Thompson with reference to the deposit in the name of the Citizens' State Bank, and that he knew nothing of any such agreement. In his letter of March 18, 1911, to T. A. Cozart he states that the $1,500 was placed to the credit of the Citizens' State Bank by a draft of the Citizens' Bank of Flynn on Houston, and suggests that this amount can be drawn by the bank that sent the defendant the amount, thus evidently refraining from asserting any claim on the part of the defendant bank to such deposit. Hence we conclude that the trial court erred in giving the peremptory instruction for defendant.

[4] Under another assignment complaint is made of the action of the trial court in excluding the introduction of the written application of C. Thompson and others to the state banking board for a charter. This application recites that C. Thompson, as president, and A. M. Beeman, as cashier, acting for and on behalf of the Citizens' State Bank, made application for authority for said state bank to accept the privileges granted under the act of the Thirty-First Legislature (chapter 15 of the General Laws of the Second Called Session) said application being verified by affidavit of said Thompson and Beeman. The application is dated February 7th, six days after the alleged conversation between Thompson and Eddleman. We think this evidence was admissible on the question of the good faith of the representations alleged to have been made by Thompson to Eddleman that he was proposing to organize the bank at Flynn. While it is true that the evidence shows that the commissioner of banking and insurance refused to grant such authority to the proposed bank so long as Thompson was connected with such proposed incorporation, and that by reason of such refusal on the part of said officer the incorporation of the bank in question was abandoned, and the evidence further shows that at the time of the trial Thompson's whereabouts were unknown to the witnesses, yet the fact that Thompson later absconded, if he did so, would not determine the probative effect of the tendered evidence on the issue of the then good faith of Thompson in the statement made as to his intentions.

In view of another trial, it is proper for us to state that, in our opinion, the court did not err in permitting the witness Eddleman to testify with reference to circumstances under which the deposit in his bank was made; such testimony being the purported history of the transaction.

[5] We are of the opinion further that, the deposit in the defendant bank having been made in the name of the Citizens' State Bank, and under the further facts of this case, the burden of proof was on the defendant to show that, in fact, the Citizens' State Bank, to be organized, and, upon the failure of the incorporation of said bank, the contributing stockholders, had no interest in the fund. The plaintiffs having established their contribution to the general fund, that the deposit made in the defendant bank was in the name of the proposed corporation, that the cashier of the defendant bank recognized that such fund belonged to the proposed corporation and was a part of its assets, that the money actually deposited in the defendant bank was the proceeds of a draft drawn in favor of the proposed corporation, we are of the opinion that the plaintiffs had made a prima facie showing as to their right of recovery generally.

The judgment is reversed, and the cause remanded.