AUGUST F. WITTE, APPELLEE AND CROSS-APPELLANT, V. JOHN J. BROZ ET AL., APPELLEES AND CROSS-APPELLEES: B. R. HENDRIX ET AL., APPELLANTS AND CROSS-APPELLEES.

FILED NOVEMBER 16, 1923. No. 22507.

1. **Bills and Notes:** CONDITIONAL DELIVERY: PAROL EVIDENCE. Under the provisions of the negotiable instruments act, section 4627, Comp. St. 1922, as between the immediate parties and as regards a remote party other than a holder in due course, the delivery of a negotiable instrument may be shown to have been conditional or for a special purpose only, and not for the purpose of transferring the property in the instrument.

2. ———: DELIVERY: PRESUMPTION. Where the instrument is in the hands of a holder in due course, a valid delivery thereof by all parties prior to him so as to make them liable to him is conclusively presumed. And where the instrument is no longer in the possession of a party whose signature appears thereon, a valid and intentional delivery by him is presumed, until the contrary is proved.

3. ———: CONDITIONAL DELIVERY: PAROL EVIDENCE. Under these

Witte v. Broz.

provisions and as between such parties, parol evidence is admissible to show a conditional delivery of a promissory note.

4. ———: ———: BURDEN OF PROOF. The burden of proof is upon the parties asserting a conditional delivery to establish the same.

5. ———: DEFENSES: PROOF. "The fact that the circumstances surrounding the purchase of a negotiable promissory note before its maturity were sufficient to excite the suspicion of a prudent man concerning the instrument will not defeat a recovery. The proof must establish that the purchase was made with knowledge of the facts concerning the execution of the note, that plaintiff believed that there was a defense to the instrument, or that he acted in bad faith or dishonestly." *First State Bank v. Borchers*, 83 Neb. 530.

6. ———: PRESENTMENT: NOTICE. The fact that the maker of a promissory note may have a valid defense does not excuse the lack of presentment for payment and notice of nonpayment if it is sought to hold the indorsers.

7. ———: ———: DISCHARGE OF INDORSERS. The holder of a note, with two makers, not partners, payable at a bank, was present at the bank a part of the day of maturity of the note, with the note in his possession. Neither of the makers was present. He made no demand upon the bank to pay the note, did not exhibit the instrument, and omitted to mention the name of one of the makers, to the bank. He had no excuse for failing to present it to one of the makers. *Held*, no sufficient presentment was made and the indorsers are discharged from liability.

8. ———: ———: ———. Even if the holder had a valid excuse for failing to present the note for payment to one of the makers, this did not excuse him for failing to present the note to the other maker, in order to hold the indorsers.

APPEAL from the district court for Lancaster county: FREDERICK E. SHEPHERD, JUDGE. *Reversed.*

*Glenn N. Venrick* and *John E. Mekota,* for appellants.

*Dort & Witte, Bartos & Bartos* and *Hall, Cline & Williams, contra.*

Heard before LETTON, DAY, DEAN and GOOD, JJ., REDICK, District Judge.

LETTON, J.

This is an action at law brought by August F. Witte as the indorsee and holder in due course of a promissory note. Defendants John J. Broz and Adela Broz are the makers of the note, and defendants Realty Investment & Holding Company, a corporation, and B. R. Hendrix are indorsers. Defendant John J. Broz admits that he signed the note, but alleges fraud by the other defendant in its procurement, and denies that the plaintiff was an innocent purchaser for value before maturity. His wife, Adela Broz, in addition, sets up the defense of coverture. Hendrix and the Realty Investment & Holding Company, of which corporation he was president and manager, each set up the defense that the promissory note was never duly presented for payment, that no notice of dishonor was ever given, and therefore each claims to be discharged from liability as an indorser, and denies fraud, and that the note was delivered on a condition.

To support the defense of fraud, defendant John J. Broz testified about as follows: He is a farmer living a few miles from the towns of Swanton and Western, in Saline county. He had been acquainted with Hendrix for many years. About the last week of March, 1920, Hendrix approached him while he was talking with a neighbor on the street at Swanton and endeavored to sell the neighbor a farm lying within a short distance of Western, enlarging upon the fact that the farm was close to town, convenient to school and church, and well improved. He asked $250 an acre for it. When he failed to interest the neighbor he endeavored to sell it to Broz, telling him that he would sell the farm that Broz then owned for $240 an acre, in a short time, and he could apply the proceeds on the purchase price of the farm near Western. He refused to buy, but sometime after this Hendrix and his brother came to him and urged him to purchase, making the same representations in regard to selling his farm, saying that they had a buyer for his farm, and adding that his note for the first payment could lie in the bank with the contract until March 1,

1921, and if they could not sell his farm by that time his note would be returned to him; that shortly afterwards the banker at Swanton, Adolph Pivonka, who was acting for Hendrix, offered to sell the farm to him for $240 an acre, repeating that they had a buyer for his farm. He finally consented to make the purchase with the understanding and agreement that the notes which he gave were to be returned to him unless his own farm was sold before the date mentioned. There is other evidence which tends to corroborate Broz as to some of these conversations. Pivonka did not testify.

That any agreement was made to return his note in case the farm was not sold within the period mentioned is emphatically denied by Hendrix. The admission in evidence of the alleged oral agreement was strenuously objected to by plaintiff at the trial. It was received over his objections and exceptions. This is the first ground of error assigned.

In the absence of a statute, it would be somewhat difficult to draw a line between the cases in which such parol evidence may be admitted and those in which it is inadmissible as tending to vary the terms of a written instrument. The distinction drawn by the courts seems to be that, if the instrument is delivered—not a mere manual delivery, but with the minds of both parties understanding that it is a completed transaction—then the evidence is inadmissible since the instrument has been completely delivered, and this even though there may have been a contemporaneous oral agreement that on the happening of some contingency the instrument should be of no force and effect. If, however, the instrument is merely manually delivered, upon the condition and understanding that it is to be retained by the holder or put in escrow until the happening of a certain event, and that it shall not take effect until the occurrence of that event, and shall be returned if the event does not occur within the time limited, then, although there has been a manual delivery, there is no actual delivery as a completed instrument until the happening of the stipulated event.

The negotiable instruments act, section 4627, Comp. St. 1922, provides: "Every contract on a negotiable instru-. ment is incomplete and revocable until delivery of the instrument for the purpose of giving effect thereto. As between immediate parties, and as regards a remote party, other than a holder in due course, the delivery, in order to be effectual, must be made either by or under the authority of the party making, drawing, accepting or indorsing, as the case may be; and in such case *the delivery may be shown to have been conditional or for a special purpose only, and not for the purpose of transferring the property in the instrument.* But where the instrument is in the hands of a holder in due course, a valid delivery thereof by all parties prior to him so as to make them liable to him is conclusively presumed. And where the instrument is no longer in the possession of a party whose signature appears thereon, a valid and intentional delivery by him is presumed, until the contrary is proved."

This permits the reception of parol evidence to show a conditional delivery as between other parties than holders in due course.

The matter is by no means free from doubt, considering the recitals in the contract of sale as to the notes and considering the fact that the burden of proof is upon the defendants Broz to establish conditional delivery, but there is sufficient evidence to carry the question to the jury, and its finding upon this branch of the case will not be disturbed.

The next question presented is whether the plaintiff is a "holder in due course" as defined in section 4663, Comp. St. 1922. "The title of a person who negotiates an instrument is defective within the meaning of this chapter when he obtained the instrument * * * by fraud, * * * or when he negotiates it in breach of faith, or under such circumstances as amount to a fraud." Comp. St. 1922, sec. 4666. If, as the jury found, the note was delivered to Hendrix, acting for the Realty Investment & Holding Company, only upon a condition, when it was negotiated by that corporation in violation of the condition, this was done "under

such circumstances as amount to a fraud." Its title therefore was defective. But, if Witte took the note in good faith and for value, under section 4667, unless he had actual knowledge of the defect, "or knowledge of such facts that his action in taking the instrument amounted to bad faith," he is a holder in due course. If so, he "holds the instrument free from any defect of title," and "free from defenses available to prior parties among themselves." Comp. St. 1922, sec. 4668. Under section 4670, "When it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims, acquired the title as a holder in due course."

With these provisions in mind, let us consider the evidence. There is no dispute as to the following facts: Plaintiff had been in the hardware, harness and furniture business at Swanton for years, and was well acquainted with the financial standing of defendants Broz. In fact, all parties to the action seem to have known each other for a long time. Witte sold his business and removed to Lincoln. On April 10, 1919, he purchased $2,000 of the common stock of the Realty Investment & Holding Company (which had been organized 6 months or a year before) from Hendrix, at par, and was later elected a director, and secretary and treasurer, of the corporation. He was paid $100 a month for his services. He had practically no voice in the management of the corporation, or of its finances, merely acting as Hendrix directed. His salary was mainly for his services in the inspection of land and for endeavoring to negotiate purchases and sales of real estate among his acquaintances. He had an agreement with Hendrix that, if he bought preferred stock of the corporation and held it for a year, he should have 7 per cent. interest on it. Soon afterwards he purchased $1,500 worth of preferred stock at par; the last purchase being in July, 1919. Within a year from his purchase of common stock it was found that the corporation could not afford to pay him his salary. Hendrix repurchased his common stock, paying him $2,600

for it, and on April 10, 1920, he resigned as director and as secretary and treasurer. It was then agreed that he would surrender his preferred stock and be paid par with 7 per cent. interest at the expiration of one year from the date of its purchase. On July 6, 1920, the year expired. He went to the office of the corporation to surrender the stock. Hendrix told him the corporation was somewhat short of cash, but that it had two notes it would like to dispose of to him in payment for his stock. One was the note in controversy, another was of another Saline county party of Witte's acquaintance. The notes drew no interest until after maturity. Hendrix offered to discount them 8 per cent. Witte accepted the offer. He surrendered his preferred stock. The amount due on it according to agreement was computed. This was applied on the purchase. He gave his check for $1,342.25 to cover the balance due on the Broz note and for $284 for the balance on the other note. Witte had no knowledge of any representations or agreement with Broz as to conditional delivery. The sale to him took place after he had left the office and employ of the corporation. There is further evidence which is material both as bearing upon the question whether Witte is a holder for value and on the question of whether there was sufficient presentment to hold the indorsers. The evidence of Witte is to the effect that, on the day when the note became due, he went with the note to the Bank of Swanton, where by its terms it was made payable; that Broz, the maker, was not there; that he called him by telephone at his home on the farm. He told him that he was the owner of the note and was waiting there for him to come in and pay it, and that Broz answered that he did not intend to pay the note; that Hendrix had promised to sell his farm by March 1, and that if it was not sold the deal was not to go through. Broz testified that when he was first called on the telephone he thought it was Hendrix, but that Witte said to him, "this is not Bert Hendrix, this is August Witte, Bert Hendrix' partner." It is claimed that this testimony is sufficient with the other

evidence to support the finding that Witte was not a holder for value.

In some cases circumstantial evidence may be sufficient to outweigh positive testimony as to a fact or facts, but when such evidence has such an unsubstantial basis as a statement said to have been made in a conversation over a rural telephone line, where there seems to have been some difficulty in understanding all that was said, where the alleged statement is collateral to the main issue and is susceptible of two constructions, where it is positively denied and there is no extraneous matter to substantiate it, and all the other proof tends to discredit it, the mere fact that it has been testified to will not be held sufficient to overcome direct, substantial and positive testimony. The expression Broz testified to might have been used in the past tense or in a loose sense, since the men had formerly been associated as officers in the corporation. But, even if it was used, it could not have been in the sense in which Broz testifies, since Hendrix and Witte were never partners. A verdict cannot be based on mere suspicion. The verdict, in so far as it holds that Witte is not a holder in due course, seems to have been based upon mere conjecture, or perhaps in view of its consequences. *Martin v. Johnston,* 34 Neb. 797; *First State Bank v. Borchers,* 83 Neb. 530. Further evidence may be produced at another trial, and perhaps the parties will not offer nor the court permit, if offered, the introduction of a mass of irrelevant and immaterial corporate records which might have had a tendency to obscure the real issue in the case and prejudicially affect the plaintiff. We think no fair-minded person reading this evidence can draw any other inference but that Witte is a holder in due course. This issue should be tried again. The instructions should follow closely the provisions of the negotiable instruments law.

Was there a sufficient presentment of the note to the makers to render the indorsers liable? Witte testifies that late in the day of the telephone conversation he met Hendrix at the Bank of Swanton; that he told him Broz had

refused to pay the note; that something had to be done, and that if he did not pay it he would have to sue them all, and that Hendrix said "of course."

The negotiable instruments act, section 4683, Comp. St. 1922, provides: "Presentment for payment to be sufficient must be made * * * at a reasonable hour on a business day; at a proper place as herein defined; to the person primarily liable on the instrument, or if he is absent or inaccessible, to any person found at the place where the presentment is made." Section 4684 provides: "Presentment for payment is made at the proper place: First. Where a place of payment is specified in the instrument and it is there presented." Section 4686 provides: "Where the instrument is payable at a bank, presentment for payment must be made during banking hours." Section 4693 provides: "Presentment for payment is dispensed with * * * Third. By waiver of presentment, express or implied." Section 4685 provides: "The instrument must be exhibited to the person from whom payment is demanded, and when it is paid must be delivered up to the party paying it."

Since the note was made payable at the Bank of Swanton, the presence of the holder or his authorized agent at the bank with the note in his possession ready to be delivered upon payment was necessary to hold the indorser, if the note was dishonored. Witte was there with the note in his possession. There is no testimony that he actually exhibited the paper and demanded payment by the cashier of the bank, or that he ever mentioned the name of Adela Broz. When he was notified by Broz that he refused to pay the note, its actual production was probably waived as to him. The note was not presented to Adela Broz in any manner whatever, nor is any waiver by her disclosed by the evidence. It is not shown on the face of the note that Adela Broz is the wife of John J. Broz. She appears to be primarily liable upon it with John J. Broz. The rule is that presentment must be made to all the makers of a note in order to hold the indorsers. *Blake v. McMillen,* 22 Ia. 358; *Closz & Mickelson v. Miracle,* 103 Ia. 198; *Shutts v. Fingar,*

100 N. Y. 539; *Benedict v. Schmieg*, 13 Wash. 476; and note to cases, 36 L. R. A. 703. There was no waiver of presentment on the part of Mrs. Broz, and consequently the presentment to the makers was insufficient, and the indorsers are discharged. The fact that Adela Broz may have a defense to the note on the ground of coverture, as she pleads, does not affect the right of the indorsers to presentment to her and notice of nonpayment, since she might have waived her disability and paid it when presented. Decisions rendered before the enactment are applicable: *Roper v. Gould*, 22 Cal. App. 114; *Peabody Ins. Co. v. Wilson & Beasley*, 29 W. Va. 528. The judgment against Hendrix and the Realty Investment & Holding Company as indorsers must therefore be reversed.

The judgment of the district court is reversed, and since all the evidence procurable as to presentment is in the record, the action is dismissed as to defendants Hendrix and the Realty Investment & Holding Company, and it is reversed and remanded for further proceedings as to the other defendants.

REVERSED.