AUGUST F. WITTE, APPELLANT, V. JOHN J. BROZ ET AL.,
APPELLEES.

FILED FEBRUARY 17, 1925. No. 24111.

1. **Bills and Notes: FRAUD: BURDEN OF PROOF.** When evidence has been produced tending to prove that a negotiable instrument was procured by fraud, or delivered to the payee upon a condition not fulfilled, the burden is upon a purchaser of the note, before due and for value, to prove that he is a *bona fide* holder.

2. ———: TRANSFER: GOOD FAITH. Upon an issue of the good faith of the transfer of a negotiable promissory note, evidence that the same remained in the possession of the transferor, and that he treated the same as his own after the alleged transfer, are competent and material facts for the consideration of the jury.

3. **Evidence** detailed, and *held* sufficient to support the verdict for defendants.

APPEAL from the district court for Lancaster County: FREDERICK E. SHEPHERD, JUDGE. *Affirmed.*

*Dort & Witte,* for appellant.

*Grant G. Martin, Bartos & Bartos* and *H. W. Baird,* contra.

Heard before MORRISSEY, C. J., DAY, GOOD and EVANS, JJ., and REDICK, District Judge.

REDICK, District Judge.

Action by August F. Witte against John J. Broz and Adela Broz upon a promissory note for $3,000, dated June 16, 1920, due March 1, 1921, executed by defendants to one B. R. Hendrix, acting for the "Realty Investment & Holding Company, a corporation," in connection with a contract for the sale of a farm of 160 acres to defendants by said corporation. Two other notes of the same date and maturity for $3,000 and $4,000, respectively, were executed in the same connection. Hendrix had no interest in the notes and immediately indorsed them to the corporation. Plaintiff purchased the note in question from the corporation July 6, 1920, for full value, and claims to have made

the purchase in good faith, without knowledge of any de-
fense thereto between the original parties, the note being
indorsed to plaintiff in ordinary course.   The defendants
allege in their answer, and present evidence tending to
sustain the same, that the notes were procured by fraud
of the corporation and its agents in that, as a considera-
tion thereof, the corporation agreed to sell a farm belong-
ing to defendants for $240 an acre by March 1, 1921, and
that if they failed to do so defendants' notes, which they
agreed would be held with the contract in the bank at
Swanton until that date, would be returned to defendants.
It was further alleged and evidence offered in support that
plaintiff was not a *bona fide* purchaser of the note in suit.
The case was tried to a jury, verdict returned for the de-
fendants, and from the judgment thereon plaintiff appeals.

This is the second appearance of this case in this court,
the decision on the former appeal being found in 111 Neb.
76, in which a verdict and judgment against the indorser
was set aside and action dismissed as to the indorser for
want of due presentment of the note, and verdict and judg-
ment against the plaintiff reversed for want of sufficient
evidence to impeach the good faith of plaintiff in the pur-
chase of the note.   It was there held, rightly as we think,
and is therefore the law of the case, that, under the issues
as presented, evidence of fraud in the original transaction
was competent, and, if established, we held in *Lahrman v.
Bauman,* 76 Neb. 846, that the burden of proof is upon the
plaintiff to show that he is a *bona fide* holder.

The evidence upon the question of fraud is quite fully
set forth in the former opinion and was substantially the
same on the second trial, and will not here be repeated.
Suffice it to say that it was amply sufficient to support the
findings of the two juries of the existence of fraud, or that
the notes were executed upon condition, which leaves but
one question for decision on this appeal as to the facts,
viz., whether the evidence is sufficient to support the find-
ing of the jury against the plaintiff.   Some questions of law

arising upon the rulings and instructions of the court will be discussed later.

The evidence presented by plaintiff as to the facts and circumstances connected with his purchase of the note in question are set forth in detail in the former opinion, to which we refer as a correct summary of that produced at the second trial, and dismiss the consideration thereof with the remark that it seems on its face to satisfy all the requirements of the statutes and law relating to bona fide purchasers of negotiable instruments, and would require a finding for the plaintiff unless impeached by other evidence sufficient in law to warrant contrary inferences.

Upon the first trial the evidence of plaintiff's bad faith was very meager, that principally relied upon by defendants being an admission or statement by plaintiff, positively denied by him, that plaintiff was "Hendrix's partner." It is stated in the opinion that "there is further evidence which is material as bearing upon the question whether Witte is a holder for value," but the same is not referred to in detail, and, as stated, we held it was insufficient to sustain a finding of bad faith. Upon the second trial further evidence on this branch of the case was received, which we will now detail.

The defendant John J. Broz testifies that on February 28, 1921, Hendrix came to his house, unbuttoned his overcoat, and said, "See, I have got your notes right in my pocket here and I will make you pay for them," and that he saw the notes in his pocket. Adolph Pivonka, who was cashier of the bank at Swanton and one of the agents of Hendrix in negotiating the contract of sale with Broz, and whose bank purchased one of the notes through Hendrix, testified that on July 16, 1920, ten days after the alleged purchase by plaintiff, Hendrix had the note in suit and the $4,000 note in his possession at the bank trying to sell them to the bank or have the bank dispose of them to its customers, and that the note in suit did not at that time bear the indorsement from the corporation to Witte; that again, on November 18, 1920, Hendrix asked witness to buy or

place the notes, offering him a commission of $400 or $500, and that he had the note in suit and the $4,000 note in his possession at that time, but cannot say whether the $3,000 note then bore the indorsement to Witte. Defendant Adela Broz is the "step-aunt" of this witness.

Joseph Pivonka, father of Adolph and step-brother of Adela, testifies that on March 1, 1921, he saw the note in question and the two other notes lying on a table in the back room of the bank when only Hendrix and his son Adolph and himself were present. The testimony of these facts was not produced upon the first trial. It was directly disputed on rebuttal by Hendrix who testified positively that he had never had possession of the note in suit since its transfer to plaintiff, nor the other $3,000 note since its sale to the bank, July 16, 1920, nor the $4,000 note since its sale to the Nebraska State Bank, according to his testimony, on November 30, 1920. The plaintiff testified that the note in suit had never been out of his possession, that he had never given it back to Hendrix for any purpose, that it was in his pocket at the Swanton bank on March 1, 1921, and never shown to anyone or laid on the table. And witness Coe of the Nebraska State Bank testified that the $4,000 note had never been out of the possession of the bank or given to Hendrix after its purchase, and that no action had been taken for the collection of the note, although it was three years past due. The second trial was had in March, 1924.

A sharp conflict is thus disclosed in the evidence upon the pivotal question of fact in the case. If the jury believed the testimony for the plaintiff, it should have found in his favor; on the other hand, if they believed the evidence for the defendant, and the same is material, it is sufficient to support the verdict.

It is earnestly contended by the plaintiff that the new testimony received at the second trial and above detailed is immaterial and adds nothing to the case made by the defendants on the first trial; but it seems to us that the facts, if found by the jury, that the note in question was in the

possession of Hendrix after the alleged purchase thereof by the plaintiff, and that on July 16 it had not been indorsed to the plaintiff, and that Hendrix on two occasions offered to sell the note to the bank at Swanton, together with the fact that the plaintiff had been an officer of the realty corporation up to a date within three months of his purchase, and that about half of the consideration was paid by the redemption of plaintiff's preferred stock in the corporation, and that plaintiff and Hendrix had had other dealings together, were all matters proper to be considered by the jury upon the question of the good faith of the transaction between plaintiff and Hendrix resulting in the transfer of the note. That question was peculiarly one for the determination of the jury, and the evidence and circumstances do not present a case upon which reasonable minds' might not differ. It is further suggested by plaintiff that possession of the note by Hendrix was not inconsistent with the purchase and ownership of plaintiff, because he would have a perfect right to entrust the same to Hendrix for collection or sale; but the difficulty here is that no explanation was offered by the plaintiff, but both he and Hendrix testified positively that Hendrix had never had possession of it after the supposed transfer. We do not feel warranted in disturbing the verdict upon the ground discussed.

A great many objections were made to the introduction of testimony at the trial, most of them being directed against the evidence tending to establish fraud in the original transaction; these have been disposed of by the law of the case, as above stated. We have examined all the other objections of this nature and find no error in the rulings of the court. We have also considered objections urged to the instructions of the court, but find them without error.

Also plaintiff urges that the court erred in refusing certain instructions offered by him. With two exceptions the principles of law stated in those requests were covered by the charge of the court on its own motion. The first exception is the fifth request, whereby the plaintiff asked the

court to charge the jury in effect that no duty rested upon the plaintiff to inquire of the maker of the note or investigate in any manner the consideration for the note, inasmuch as there was nothing upon the face of the note to excite suspicion of any defects therein. This request stated the law and might properly have been given, but its refusal was not prejudicial error, in view of the fact that by instruction No. 4 the court told the jury: "The mere fact that the circumstances surrounding the purchase of the note may be such as to excite suspicion in the mind of a prudent man is not sufficient to impugn the title of an innocent purchaser or *bona fide* holder." And by instruction No. 5: "If you find by a preponderance of the evidence that the plaintiff bought the note for a valuable consideration before it was due, and without notice of any circumstances under which it had been obtained, and without any bad faith or lack of honesty on his part, then and in that case you should find that he became an innocent purchaser and *bona fide* holder of the paper." We may further remark that the questions on this subject, upon the cross-examination of plaintiff, were not objected to at the trial. The second exception is request No. 3, which contained the erroneous statement that "it is incumbent upon the defendants to convince you by a preponderance of the evidence that the plaintiff had knowledge of said fraud," etc., whereas the burden was upon the plaintiff to show that he was an innocent purchaser.

The judgment of the district court is

AFFIRMED.