[No. 21253. Department One. October 8, 1928.]

A. M. GARRISON et al., Appellants, v. JOHN ANDERSON et al., Respondents.[1]

D. V. Morthland, L. B. Vincent, and Bushnell & Beardsley, for appellants.

McGregor & Fristoe, for respondents.

MITCHELL, J.—Plaintiffs sued the defendants on October 9, 1925, alleging a breach of a written contract dated September 18, 1925, by which defendants sold their 1925 crop of winesap apples to the plaintiffs. The terms provided in the contract were "$600 advance balance on packout." Damages were claimed for failure to deliver the apples. The answer alleged, first, fraud on the part of the plaintiffs during the negotiation between the parties, consisting of plaintiffs' misrepresentations of market conditions; and second,

[1] Reported in 270 Pac. 802.

that, as an inducement to procure a contract, the plaintiffs agreed they would advance immediately the sum of six hundred dollars on the apple crop and that, relying thereon, defendants executed the contract, and that the plaintiffs refused and failed to make the cash payment. The verdict was for the defendants, and the plaintiffs have appealed.

There is a conflict in the evidence, but the jury was entitled to understand that the transaction occurred about as follows: A. H. Ferguson conducted the negotiations on behalf of the appellants. On September 18, 1925, the day the contract was signed, Anderson told him that he was in immediate need of money to meet a threatened law suit, and also to commence harvesting his apples. Ferguson went through the orchard and thought it would pack out three thousand boxes and said that he would advance twenty cents a box or six hundred dollars. Anderson asked his wife, and she thought "he had better let them go." Anderson, referring to the six hundred dollar payment, testified:

"Q. What I am getting at, did he say he could pay that down? Ans. Yes."

Ferguson made out the contract in duplicate and Anderson testified that he signed it and Ferguson signed it keeping a copy and giving Anderson a copy but that, before it was signed, "we agreed he was going to pay right away because I told him I had to have the money right away." Upon getting his copy of the contract, Ferguson put it in his pocket and walked away without paying anything. No payment was made by the appellants at any time.

Respondents promptly got money elsewhere on the faith of the apple crop to meet his urgent demands; and on October 7, after the market price of apples had materially advanced, appellants requested Anderson

to commence delivering the apples, and were advised by him that the apples would not be delivered to them as they had not made any payment. This suit was commenced two days later, and within a week or ten days thereafter, appellant offered him a check, amount unknown to Anderson, saying,

"If you accept this check we will recall the case, and you let us have the apples," to which Anderson replied, "No, I won't take any check now."

The argument on behalf of the appellants is that, as the contract was executed and delivered, the provision as to advancing six hundred dollars was made a part of the contract, and not merely a condition to the delivery of it. The argument assumes that there was a delivery. It is perfectly clear from respondents' proof, which the jury was at liberty to believe, that Anderson, being in immediate need of money, of which appellants were advised, offered to sell the apples at the prices agreed on provided six hundred dollars was paid at that time; and that, agreeing thereto, appellants prepared the contract in duplicate, had Anderson sign it and then signed it for themselves, separated the instruments, handed one to Anderson, kept the other and walked away. To call that a delivery, under the circumstances of this case, would be to reward one for tricking another. Appellants' account of the transaction was different, but which of the two was entitled to credence was a question for the jury.

The term "deliver" should not be used loosely. It has two meanings. First, it may mean a manual delivery, that is, the mere physical act of handing the paper to another. Second, it may mean this physical act accompanied with the intention that it shall take effect as a valid legal obligation. As said in *Carpenter v. Carpenter,* 141 Wis. 544, 124 N. W. 488:

284

"Mere manual transition of such a paper is one thing, delivery thereof as an element of a contractual obligation is another. The former without mutual intent to give validity to the paper, but a mutual intent to the contrary, does not constitute the latter." (Citing cases.)

Also, see: *Witte v. Broz,* 111 Neb. 76, 197 N. W. 121; Annotation p. 425, vol. 20 A. L. R.; Annotation p. 703, vol. 54 A. L. R.

Certainly the jury was authorized to find that Anderson handed the paper to Ferguson only to have him sign it, and that Anderson never intended to give validity to the paper as a contractual obligation except upon the payment to him at that time of the sum of six hundred dollars, and that Ferguson gave him to understand that he so understood it; and to further find that such payment was not made.

It is further claimed that the court erred in submitting to the jury the question of fraud consisting of appellants' alleged misrepresentations of the market price of apples at the time of negotiation between the parties, because of insufficiency of proof, and that to submit that question was prejudicial to their rights as to the other issues. Whether there was enough in this respect to go to the jury we need not discuss nor decide; nor can we agree in any event that the submission of that issue prejudiced the rights of the appellants as to the issue relating to the delivery of the contract. The two defenses were pleaded affirmatively, and in addition to the general verdict, the jury returned a special finding or verdict in favor of the respondents on the issue as to the delivery of the instrument.

Affirmed.

FULLERTON, C. J.; PARKER, BEALS, and TOLMAN, JJ., concur.