STATE, EX REL. C. A. SORENSEN, ATTORNEY GENERAL, APPELLEE, v. COLUMBUS STATE BANK, APPELLANT: BERTHA GROSS, INTERVENER, APPELLEE.

FILED JANUARY 6, 1933. No. 28310.

*Wagner & Wagner* and *F. C. Radke,* for appellant.

*McElfresh & Walker, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

EBERLY, J.

This is an action in equity by Bertha Gross, intervener, to impress a trust in her favor in the amount of $145 upon the assets of the Columbus State Bank, an insolvent institution. In the district court judgment was given for the intervener, and the receiver, a representative of the depositors, who are the real parties in interest, appeals.

The facts making up the transaction out of which the litigation arises are not substantially in dispute, and embrace the following: Miss Gross, a teacher of the Columbus city schools, in payment of salary received a school warrant, of which the following is a copy:

"Columbus, Nebraska, 10/15/30. No. 12. Treasurer of School District City of Columbus. Pay to the order of Bertha Gross $145, the sum of one-hundred forty-five and no/100 dollars, out of. any moneys in your hands belonging to the general fund. Payable at par through any bank in Columbus, Nebraska. John L. Pittman, President. O. F. Walters, Secretary."

Intervener indorsed her name on the back of this instrument in the form of an indorsement in blank, placed the same in an envelope which she addressed to an "out of town bank," and to which she affixed the necessary stamp, and then intrusted the same to one of her pupils, a fourteen year old girl, with directions to deposit the same in the United States mails for transmission to the addressee. This messenger, unfaithful to her trust, removed this school warrant from the envelope and, aided by and because of the genuine signature of the payee regularly indorsed on the back thereof, "cashed" the instrument at the Columbus State Bank. The president

of this institution transacted this business with intervener's messenger, and testifies that the method followed was the usual way of handling transactions of this kind; that there was no benefit to his bank in the transaction; that the treasurer of the local school district had his checking account with the Commercial National Bank of Columbus, and that, after the payment of the $145 had been made to the messenger, this instrument "was put in the clearing, and that is how we got our money back." As to this fact, this witness is fully corroborated by the cashier of the Commercial National Bank, who testifies that, during the month of October, 1930, the school funds of the local district were deposited in his bank, and that this "Gross" school district warrant was by it on October 17, 1930, received "through clearing" from the Columbus State Bank, which transaction of "clearing" his testimony substantially describes. This "Gross" school warrant, thus received as a check, was then by the Commercial National Bank as a check charged against the school district account. Thus, it appears by uncontradicted evidence that the usual or customary transactions involved the "cashing," the "payment" of the warrants as they were presented to the banks of Columbus by the holders thereof; and this established course of business we accept as embodying the practical interpretation of their respective rights and duties by all parties to these transactions.

The language of the original school district warrant with its indorsement is quite consistent with the course of business outlined by the evidence. Written across the back of the warrant appears the genuine signature, "Bertha Gross." Under it appears the impression of the cancelation stamp of the Columbus State Bank, and there also appears the perforation cancelation stamp of the Commercial National Bank. Both of these stamps appear to have been applied to the school warrant in the same manner as when applied to checks paid at their respective counters.

It would also seem that we are fully justified in hold-

ing that the evidence, the circumstances disclosed by the record, as well as the actual course of the business, fairly establish what is tantamount to an agreement between the school district and the banks of Columbus that the latter, wholly without compensation to themselves and for the benefit and convenience of the school district, would cash or pay for and on behalf of the latter such school district warrants issued by it bearing on the face thereof the words, "Payable at par through any bank in Columbus, Nebraska;" and for such outlays made by them would receive due reimbursement. Indeed, it is inconceivable that without such prior understanding the officers of this district would have incorporated in their warrants issued by them the language under consideration.

It is quite obvious that these transactions, so far as the banks engaging therein are concerned, could not be considered as investments made by them or entered into by them for their individual financial advantage.

Even so, it must be admitted that not only are the terms of the basic instrument which constitutes the source of this litigation unusual, but the course of business is itself novel. As part of the warrant, as already noted, we find the words, "Payable at par through any bank in Columbus, Nebraska." The word "payable," when used in promissory notes and other commercial transactions, means ordinarily "to be paid," rather than "which may be paid." *Johnson v. Dooley,* 65 Ark. 71, 40 L. R. A. 74.

A check, on the face of which appeared the words "payable through (a named bank in another city of the same state) at current rates," was before the supreme court of Georgia in the case of *Farmers Bank v. Johnson, King & Co.,* 134 Ga. 486, and it was held that this was a material part of the direction, that the check "is to be paid in that way," and that the drawee bank was not required to pay the check when not presented through the bank thus named but directly by a third bank.

Our court is likewise committed to the view that the

words, "payable at (a designated bank)," in a promissory note are a material term, and compliance therewith in the transaction then before this court was obligatory upon those seeking to hold the indorsers thereon to their contractual liability. *Witte v. Broz,* 111 Neb. 76, 84.

Thus, we see that the words "payable at (a designated bank)" employed in commercial paper are effective to create an agency where legal demand for payment may be made which will be binding on all parties thereto. 8 C. J. 549.

By parity of reasoning, in consideration of the established facts of the instant case, and accepting the principles announced in *Farmers Bank v. Johnson, King & Co., supra,* we arrive at the conclusion that the employment in this transaction in a similar manner of the words, "payable at par through (a designated bank)," was necessarily intended, and is effective, to create an agency for payment vested for the purpose expressed with full and complete powers of the principal. The designated bank is the agent of the maker of the instrument. Its acts within the scope of the authority conferred are the acts of its principal. Whatever may come into its possession because of such acts, or pursuant thereto, is and must be deemed the property of the principal. And if such agent, in any of such transactions, advances or uses its own moneys or funds, such moneys or funds will, in equity, be deemed advancements made to the principal, and for its use and benefit, and for which the agent will be entitled to reimbursement. But such advancements of moneys and funds by the agent will not, as against his principal, ordinarily invest the agent with title to the obligation, for the payment or discharge of which such moneys or funds were employed.

Where an agent "is employed to compromise or settle claims against his principal, he will not be permitted to purchase such claims himself and enforce them against his principal." 2 C. J. 708. See, also, *Crile v. Fries,* 86 Neb. 789.

Neither will his right to reimbursement be limited to

the enforcement of the obligations discharged by his advances, but the right of reimbursement is wholly unconnected therewith. · The necessary propriety of this rule may be illustrated by a concrete example: Assuming that on the last moment of the last business day permitted by the statute of limitations, a written obligation containing the clause now under consideration be presented to the agent named therein for payment. Under the conditions assumed, it is obviously the duty of the agent to pay it. But, would it be seriously contended that, if in making such payment the agent was compelled to and did employ his own funds for his principal's benefit, his right to reimbursement could in any manner be affected or denied because on the succeeding day the obligation thus paid, if then unpaid, would be barred by the statute? And then again, in this equitable procedure the maxim that equity regards intent and substance rather than form is controlling. It can therefore make no difference as to the resulting equities of the parties whether in pursuit of this course of business, or in carrying out the contract involved, a Columbus bank, as agent, on receipt of the school district warrants presented for payment at par over its counters, pays the same from moneys of the school district on deposit with it, or then otherwise in its actual possession, or whether it employs its own funds in making such payment, and thereafter is reimbursed. The substance of the two transactions, in view of the fundamental rights of the parties, is identical, and equities arising therefrom cannot be different.

Thus, the evidence in the record establishes that every act performed by the Columbus State Bank was the act of an agent, and ostensibly within the scope of the authority evidenced by the terms of the school district warrant which it paid. Though the money actually paid was money advanced by it to and for the benefit of its principal, the school district, yet as paid over to the party cashing this warrant, it was in equity the money of the school district and not of itself. This warrant with its "paid stamp" impressed thereon was thereafter promptly

transmitted as required by the course of business, and as agent this bank was then reimbursed out of the school district funds for the payment thus advanced. The Columbus State Bank never was, and in equity was expressly precluded from being, the owner of the school district warrant, and never in legal contemplation sold this warrant to its principal. After payment thereof to Miss Gross' messenger, improperly made it may be admitted, this school district warrant was thereafter at all times treated by the Columbus State Bank as the property of the school district issuing the same. The actual possession thereof by the agent (the bank) was the legal possession of the principal (the school district). There was no admixture or confusion of the assets evidenced by the school district warrant with the individual property of the agent bank. The honesty and entire good faith of this institution and of its officers and employees stand unchallenged. These facts expressly negative the theory that the individual property of the Columbus State Bank was, as a result of this transaction, in any manner "enhanced," "swelled," or "augmented," and for lack of this essential element of proof, it would seem that intervener has failed to sustain the cause of action upon which she relies in the instant case.

Nor can this conclusion be affected by the question of the power of the school district to create an agency for payment. Ostensibly such agency was created by the express language employed in the warrant before us. This transaction was carried out and completed by both school district and bank in strict compliance with the powers thus conferred. No act was performed therein by the Columbus State Bank inconsistent with its character as agent, the fruit of the agency was accepted by the school district, reimbursement was made, and on this basis the transaction was closed.

In thus denying the claim of intervener to impress a trust upon the assets of the Columbus State Bank to the extent of the value of this warrant, we are not overlooking the following contentions: That a school district

warrant in Nebraska is not a negotiable instrument; that a thief cannot convey title to a school district warrant to a purchaser for value and in good faith, even though this warrant at the time of such transfer bears the genuine indorsement of the payee; that the real owner of the paper, under these circumstances, may pursue and claim his property in the hands of whomsoever it may be; that every act of control or dominion over property without the owner's authority, and in disregard of his rights, is in contemplation of law a conversion; that it is not the advantage accruing from the defendant's act nor the motives inducing it, but the substantial injury inflicted on the plaintiff which ordinarily constitutes the gravamen of the action; and that a person intermeddling and assuming the management of property (including an embezzled warrant) without authority will be a trustee *de son tort,* and that the indorsement of such school district warrant by the owner thereof does not estop him to assert title thereto.

Conceding these principles, as applied to certain concrete cases, to be correct statements of common law doctrines, the fact remains that this court has denied their application in cases where the controlling facts were substantially identical with those of the instant case, and refused recovery to the admitted owner of the warrant.

We refer to the *Bartley* cases which are reported as follows: *Bartley v. State,* 53 Neb. 310, on rehearing 55 Neb. 294, *State v. Omaha Nat. Bank,* 59 Neb. 483, and *State v. Omaha Nat. Bank,* 66 Neb. 857. To set forth fully the facts involved and the varying judicial views would unduly extend this opinion. But we may epitomize the facts involved as follows: Bartley was state treasurer. Pursuant to legislative authority, and to reimburse the state sinking fund, on April 10, 1895, a state warrant in due form was issued, which in terms directed the "Treasurer of Nebraska, Pay to J. S. Bartley, or order (a sum definite)," and which on its face recited, "For to reimburse state sinking fund." This warrant was by the state treasurer indorsed, "Presented and not paid for

want of funds and registered for payment April 10, 1895, Number 27932." Almost immediately thereafter Bartley indorsed his name on the back of this warrant and delivered the same to the Omaha National Bank for negotiation and sale. The Omaha National Bank sold it to the Chemical National Bank of New York. The proceeds of the sale were credited to J. S. Bartley in his individual capacity and paid out on his individual check. In November, 1896, this warrant, upon notice of the state treasurer directing its presentation for payment as a duly registered state warrant, was transmitted by the Chemical National Bank to the Omaha National Bank, and by the latter institution presented to J. S. Bartley as state treasurer, who in his official capacity paid the same by his official check drawn on the Omaha National Bank as a state depositary. The Omaha National Bank then remitted the funds so collected to the Chemical National Bank of New York. This court in the cases referred to, in effect, determined: That the state warrant was a nonnegotiable instrument; that it was properly issued, but "that the fact that Bartley had the right to receive it" conferred on him no authority to dispose of it, and that the instrument and the moneys evidenced thereby were at all times, in equity, the property of the state of Nebraska; that the facts enumerated constituted evidence ample to sustain a conviction of embezzlement by Bartley. But, in an action by the state against the Omaha National Bank, based on this transaction, it being in effect established by the evidence and found by the trial jury that what was done by the Omaha National Bank, its officers and agents, was in the usual course of banking business, innocently of the true nature of the transaction, and in good faith and without knowledge, and that no profits accrued to the institution by reason thereof, a recovery against the Omaha National Bank was denied.

The rule, controlling, announced by Day, C. (later a justice of this court) in the final opinion which a majority of this court adopted is: "Where property has

been taken from the plaintiff without his knowledge or consent or of those having the lawful custody over it, the motive which prompted the defendant to receive and dispose of it is an immaterial issue. But this rule does not apply when the plaintiff, his agent or servant, having the lawful custody or control over the property, consents to or requests the defendant to receive and dispose of it. In such case guilty intent is an essential element of conversion."

Miss Gross' messenger on this occasion was her servant. "The master's possession of personalty continues where he delivers a thing to his servant to be by him kept, used, carried, or applied in the course of his employment as a servant. The servant is said to have, not the possession, but a mere charge (*onus*) or custody." 1 Labatt, Master & Servant (2d ed.) 733.

"Custody of property means such a relation towards it as would constitute possession if the person having custody had it on his own account." 8 Am. & Eng. Ency. of Law (2d ed.) 530.

The instant case, in view of the admitted facts, would fall within the exception to the general rule above announced by Judge Day, and it would for this reason, in addition to the one heretofore given, follow that the evidence in the record is wholly insufficient to sustain the determination of the trial court.

The judgment of the district court is therefore reversed and the cause remanded.

REVERSED.