## FARMERS BANK OF NASHVILLE *v.* JOHNSON, KING & COMPANY.

1. Where a check was drawn on a bank located in another town than that in which the drawer resided, and immediately following the direction to the drawee bank, which was in the lower left-hand corner of the check, there were stamped, at the time when the check was drawn, the

words, "payable through [a named bank in another city of the same State] at current rate," this was a material part of the direction; and the drawee bank was not required to pay the check when not presented through the bank thus named, but directly by a third bank.

2. Under such circumstances, if the third bank, which held the check, presented it to the drawee bank, and the latter indorsed on it the statement that it would be paid when presented through the named bank, this did not authorize the bank holding the check to have it protested.

3. For the holder of a check to unlawfully cause a protest of it to be made, and notice to be given to the drawer and indorsers, without proper presentation for payment, according to its terms, furnishes a cause of action to the drawer.

MAY 11, 1910.

Action for damages. Before Judge Whipple. Berrien superior court. May 14, 1909.

Johnson, King & Company, a corporation doing business in Macon, brought suit for damages against the Farmers Bank of Nashville, Georgia. The petition as amended alleged as follows: On December 30, 1905, the plaintiff issued a check of which the following is a copy:

"Johnson, King & Company.　$62.00.　No. 1044.

"Macon, Ga., Dec. 30th, 1905.

Pay to the order of Hawley & Hoops, sixty-two and 47/100 $62.47 Dollars.

Johnson, King & Co., By Jno. C. Holmes, V. P. & Gen. Mgr.

"To Bank of Nashville, Nashville,. Ga.

"Payable through the Citizens Bank of Valdosta, Valdosta, Ga., at current rate."

. On the same date the plaintiff issued three other checks drawn on the Bank of Nashville, similar in form to the one above, and differing only as to amount and the name of the payee. The words, "Payable through the Citizens Bank of Valdosta, Valdosta, Ga., at current rate," were stamped on each check. The checks were presented to the Bank of Nashville, at Nashville, Ga., by the Farmers Bank of Nashville, Ga., three of them being presented on January 8, 1906, and one on January 6, 1906. Upon presentation the Bank of Nashville entered on the back of the checks, "Will pay when presented through the Citizens Bank of Valdosta, Georgia." Thereupon the Farmers Bank of Nashville caused the checks to be protested, each protest bearing the same date as the presentation for payment; and notice of dishonor was sent to cer-

tain indorsers and to the drawer. The Bank of Nashville never refused to pay the checks, but, through its officers, stated to the Farmers Bank of Nashville, that it objected to the manner in which the checks were presented, it being different from the terms expressed on their face, and that they would be honored when presented through the Citizens Bank of Valdosta. At the time when the checks were drawn, and when presented to the Bank of Nashville by the Farmers Bank of Nashville, the plaintiffs had a sufficient amount of money on deposit in the Citizens Bank of Valdosta, subject to check for their payment. The plaintiff had an arrangement with the Bank of Nashville by which all checks drawn on that bank would be paid if presented through the Citizens Bank of Valdosta. The Farmers Bank of Nashville wilfully disregarded the terms of the checks, which were that they were "payable through the Citizens Bank of Valdosta, Valdosta, Ga., at current rate," and, for the purpose of casting suspicion upon the credit of the plaintiff before the commercial world, protested the checks and thereby damaged the plaintiff. The protest was made for the purpose of causing the plaintiff to become offended with the Bank of Nashville, and of forcing it to become a depositor with the Farmers Bank of Nashville and its associates.

The defendant demurred to the petition. The demurrer was overruled, and the defendant excepted.

*Buie & Knight, Hendricks & Christian,* and *E. P. S. Denmark,* for plaintiff in error. *W. A. Dodson* and *W. H. Griffin,* contra.

LUMPKIN, J. (After stating the foregoing facts.) A story is told of a distinguished writer on the subject of negotiable instruments, to the effect that when he was asked what first suggested to him the idea of preparing such a work, he answered that he became interested in the question as to whether a demand was necessary in order to enforce by suit a promissory note or acceptance payable by its terms at a specified place, and that the extensive inquiry on this subject into which he was led suggested to him the utility of a new work on negotiable instruments. The story further proceeds, that, when the inquirer asked him whether such a demand was necessary, he humorously replied that he had forgotten. Whether this is without foundation or not, it serves to indicate the wealth of inharmonious learning which has been lavished upon a question which, at first sight, would appear to be quite

narrow. Much of the conflict in authorities has arisen over the
question whether, in an action against the maker of a promissory
note or the acceptor of a bill of exchange payable at a particular
place, it was necessary to aver and prove a demand at such place.
In England the authorities were divided on the subject of such ac-
ceptances. The Court of King's Bench held, that where there was
an acceptance payable at a specified place, it was not necessary to
allege or prove demand at that place, in a suit against the acceptor.
The Court of Common Pleas on the other hand held that this made
a qualified acceptance, and that presentment at the place stipulated
must be averred and proved. In 1820 the case of Rowe v. Young,
2 Brod. & Bing. 165 (6 E. C. L. 83), came before the House of
Lords. It was there decided that where the acceptance named a
place of payment, demand at such place must be averred and
proved. In the following year an act of Parliament was passed on
the subject, declaring that an acceptance payable at a banker's or
other specified place, without more, should be deemed a general ac-
ceptance; but if it were expressed to be payable at a banker's or
other place "only, and not otherwise or elsewhere," it would be a
qualified acceptance. This statute did not deal with promissory
notes, and some of the decisions made a distinction as to them,
where the place of payment was named in the body of them. In
this country a contrary doctrine to that declared by the House of
Lords was laid down by the Supreme Court of the United States
in the case of Wallace v. McConnell, 13 Pet. 136 (10 L. ed. 95).
It was held in that case that in actions on promissory notes against
the maker, or on bills of exchange against the acceptor, where the
note or bill is made payable at a specified time and place, it is not
necessary to aver in the declaration, or prove on the trial, that a
demand for payment was made, in order to sustain the action; but
if the maker or acceptor was at the place at the time designated
and was ready and offered to pay the money; it is matter of defense,
to be pleaded and proved on his part. This decision has been gen-
erally followed in America, and the ruling has been adopted in
this State. *Dougherty* v. *Western Bank of Georgia,* 13 *Ga.* 287.
It was said by this court that the defendant may plead readiness
to pay at the place stipulated, or damages sustained by him in con-
sequence of the neglect or omission to make the demand, and, upon
proof of his plea, the defendant shall be exonerated to the extent

of the damages which he has sustained. It will be observed that the decisions above mentioned have reference to a case in which the acceptor of a bill of exchange or a maker of a promissory note is sued, not to questions involving the liability or release of indorsers or drawers of accepted bills.

In many respects a check is like an inland bill of exchange, but there are some differences. A check has been defined to be a "a draft or order upon a bank or banking house, purporting to be drawn upon a deposit of funds for the payment at all events of a certain sum of money to a certain person therein named, or to him or his order, or to bearer, and payable instantly on demand." 2 Daniel on Negotiable Instruments (5th ed.), § 1566. A check does not have to be accepted upon presentment, but paid, if good and if properly presented. One of the differences between a common check and an ordinary inland bill after its acceptance is in relation to the drawer. In the former the drawer is the principal debtor, and the check purports to be made upon a fund deposited; in the latter the acceptor is the principal debtor. The negligence of the holder of a check in not making due presentment, or as to giving to the drawer notice of dishonor, does not absolutely discharge him from liability except to the extent to which he may have suffered loss or injury by reason of such negligence.

These principles have been stated because citations were made of cases which arose under them. They do not, however, fully cover the present case. Here the drawee of a check was a bank in a different place from that where the check was drawn and the drawer resided. The direction to the drawee bank was at the left-hand lower corner of the check, and immediately under it were the words, "Payable through the Citizens Bank of Valdosta, Valdosta, Ga., at current rate." The check was not forwarded through the Valdosta bank, but came into the possession of a bank in Nashville, Georgia, the place where the drawee bank was located, and was thus presented to it. Whether the check was deposited with such demanding bank, or sent to it for collection, or how it became the holder, is not stated. On presentment, the drawee bank indorsed on the back of the check these words, "Will pay when presented through the Citizens Bank of Valdosta." Thereupon the check was protested for non-payment, and a suit to recover damages was brought by the drawer against the collecting bank which caused

the protest to be made, on the ground that such protest was wrongful, and was maliciously made.

Two questions are involved: (1) Whether the words "Payable through the Citizens Bank of Valdosta," etc., formed a part of the check, which the drawee bank was bound to regard, or which it had the right to disregard. (2) Whether this direction required payment through the Valdosta bank, or whether it was merely permissive, so that payment could be demanded through that channel or directly from the drawee bank at Nashville. If the presentment to the drawee was required to be made through the Valdosta bank, then the drawee had the right to decline payment except upon presentment in that manner; and if the bank holding the paper refused to recognize such reason for non-payment on presentment by it, and caused the check to be protested, and notice to be given, this was unwarranted.

It was contended that the words, "Payable through the Citizens Bank of Valdosta," etc., followed the signature, and formed no part of the check, but amounted merely to a memorandum, which the holder of the check did not have to regard. In England there is a well-known usage, which has now been made the subject of an act of Parliament, for the drawer or holder of a check to "cross" it with the name of a banker. In 2 Daniel on Negotiable Instruments (5th ed.), § 1585a, it is stated that the effect of this was, "before the statute which now exists, a direction of the drawee bank to pay the check to no one but a banker; or rather, according to the cases, with only a caution or warning to the drawees that care must be used, in paying it to any one else." In 1 Morse on Banks and Banking (4th ed.), § 245, it is said: "In this country the system of 'crossed checks,' strictly so called, is unknown. But of late the germ of a similar custom has begun to manifest itself. Occasionally checks have stamped or written upon them some form of words which is intended to secure their payment exclusively through the clearing-house. No especial form has as yet been generally accepted, and the legal effect of none of those in use has ever been passed upon. It is safe to say, however, that there is no question but that the drawer could embody in his order a direction to his bank to pay only upon presentation of the instrument in the usual course through the clearing-house, and that such a direction would be as valid and as binding upon the bank as a direction to .

pay only to the order of a particular person. If the check be payable to the order of A. B., it is probable that the privilege of including such instructions in his order, when indorsing over, might be accorded to him; certainly indorsements in this form are very frequent, and no bank would be safe in disregarding them. Supposing the direction to be properly given, the collecting and the paying bank must both respect it, and the English cases above mentioned would be precedent directly in force. It would amount to an express designation by the drawer, or the payee, of the manner alone in which payment is authorized to be demanded or made." A check being in the nature of an order on a bank or banker to pay a certain sum purporting to be on deposit, there would seem to be no reason why the drawer could not direct the bank to pay only when presented through a specified channel or by a particular person or bank. The drawer is not compelled to make the check payable to bearer or order. Likewise no sound reason is perceived why, in giving direction to the bank of deposit, he can not make an addition to the mere order for payment. If the person to whom the check is delivered is not willing to accept it with such direction, he can reject it; but if he accepts it payable only through a particular bank, or through a particular banker, he can not insist that the bank on which it is drawn must disregard this direction given to it by its depositor on the face of the paper. No ground has been suggested why such a direction by one to his banker, in ordering the latter to pay money, is illegal or unreasonable, the banks being in the same State and not far distant from each other. The case in hand does not present the question of whether the drawer of the check has been wholly or partially discharged by negligence or delay in presentation, but whether, in giving direction to his banker to pay the check, he can lawfully direct payment to be made through a certain medium, and whether the bank, when so instructed, is bound to disregard such direction at the demand of another collecting bank.

In Nazro & Green *v.* Fuller & Patterson, 24 Wend. 374, it was held that an alteration of a promissory note by the payee thereof, so as to make it purport to be payable at a particular place, vitiates it in the hands of an indorsee, so that he can not recover upon it in an action against the maker; and that if it be doubtful whether it be an alteration of the note or a mere memorandum by the payee

indicating where demand for payment should be made to charge. him as indorser, the question, it seems, should be submitted to a jury. In Warrington v. Early, 2 Ellis & Black. (75 E. C. L.) 763, a promissory note was made payable six months after date, "with lawful interest." After it had been signed, without the assent of the maker, but with the assent of the holder, there was added, in the corner of the note, "interest at six per cent. per annum." It was held that this addition materially altered the contract; and that the holder could not recover on the note against the maker. As to alterations in written contracts in this State, see Civil Code, §§ 3702, 3703; *Gwin* v. *Anderson*, 91 *Ga.* 827 (18 S. E. 43); *Hotel Lanier* v. *Johnson*, 103 *Ga.* 604 (30 S. E. 558); *Pritchard* v. *Smith, Stewart & Co.*, 77 *Ga.* 463. See also Woodworth v. Bank of America, 19 Johns. 391 (10 Am. D. 239); Polo Mfg. Co. v. Parr, 8 Neb. 379 (1 N. W. 312, 30 Am. R. 830); Farmers Bank of Kentucky v. Ewing, 78 Ky. 264 (39 Am. R. 231); Wait v. Pomeroy, 20 Mich. 425 (4 Am. R. 395); 1 Daniel on Negotiable Instruments (5th ed.), §§ 149, 150, pp. 173, 174, and citations; 4 Am. & Eng. Enc. L. (2d ed.) 137 (11), 140; *McCalla* v. *McCalla*, 48 *Ga.* 502; *Mayor and Council of Griffin* v. *City Bank of Macon*, 58 *Ga.* 584.

It is commonly stated that the contract must be collected "from the four corners" of the document, and no part of what appears there is to be excluded; and Mr. Daniel, in his work on negotiable instruments, has somewhat broadly declared that, as indorsements are made on the back of a negotiable instrument, it might be said that the purport of the instrument is to be collected from "the eight corners." 1 Dan. Neg. Inst. (5th ed.) § 151, p. 175. A distinction is sometimes made between an entry upon a note or check at the time when it is made, and which is intended as a part of it, and a mere memorandum made by some person for convenience, and forming no part of the instrument. In the case before us the direction immediately follows the name of the drawee bank. From the allegations of the petition it appears to have been placed there when the check was drawn, as a part of the direction to the bank. It was a material part of such direction, and the drawee bank had the right to decline to disregard it.

It was argued that the statement that the check was "payable" through the Valdosta Bank did not indicate the exclusive method of collection, but gave to the holder an option to present it through

that medium or through any other medium to the Nashville Bank. If a negotiable instrument is payable at one of two banks, it may be presented for payment to either. The word "payable" has been defined as follows, "that may, can, or should be paid; suitable to be paid; that may be discharged or settled by delivery of value; matured; now due." Webster's Dictionary. As commonly employed in commercial paper or contracts, in stating the time or manner of payment, the word "payable" does not give to the debtor an option or privilege of paying at such time or in such manner, but signifies that payment is to be thus made. If it should be stated in a note or bill of exchange that the amount mentioned was payable in thirty days, clearly the expression would mean that such amount was to be paid at that time, not merely that the debtor might then pay it. So if an obligation should be declared to be payable in gold coin of a certain fineness, it would mean that it was to be thus paid. And numerous illustrations might be given. A direction in a check to the drawee bank, that it is "payable" through another named bank, means that it is to be paid in that way. City of Alma *v.* Guaranty Savings Bank, 60 Fed. 203 (80 C. C. A. 564) ; Cate *v.* Patterson, 25 Mich. 191, 194; Johnson *v.* Dooley, 65 Ark. 71 (44 S. W. 1032, 40 L. R. A. 74) ; Easton *v.* Hyde, 13 Minn. 90; Webster *v.* Cook, 38 Cal. 423. Taken in connection with the direction from the drawer of the check to the drawee bank to pay a certain sum, the addition meant that the sum was to be paid through the Valdosta Bank.

It follows from what has been said, that, under the allegations of the petition, the drawee bank had a right to decline to pay the check until presented through the Valdosta Bank, and that, upon its entering on the back of the check that it would pay when so presented, the collecting bank was not authorized to cause the check to be protested and notice to be given. It was therefore not erroneous for the trial judge to overrule the demurrer to the petition. We have not discussed the motive which it was alleged actuated the collecting bank in causing the protest to be made, as without it we hold that the petition set out a cause of action. *Atlanta National Bank* v. *Davis,* 96 *Ga.* 334 (23 S. E. 190, 51 Am. St. R. 139) ; *Hilton* v. *Jesup Banking Co.,* 128 *Ga.* 30 (57 S. E. 78, 11 L. R. A.

(N. S.) 274) ; *State Mutual Life Association* v. *Baldwin,* 116 *Ga.* 855 (43 S. E. 262).

> Judgment affirmed.　All the Justices concur.