**PHILLIPS PETROLEUM CO. v. FIRST NAT. BANK OF PAMPA.**

No. 4060.

Court of Civil Appeals of Texas. Amarillo.
Oct. 25, 1933.

Rehearing Denied Nov. 22, 1933.

Gibson, & Sutton, of Amarillo, for plaintiff in error.

Cook, Smith, Teed & Wade, of Pampa, for defendant in error.

MARTIN, Justice.

The parties will be designated herein as in the trial court.

Plaintiff, on all the dates mentioned herein, was a manufacturer of gasoline and oil, which it sold through local agencies. One of these was located at Pampa in charge of one W. A. Wilson. It is alleged in substance, in a suit filed by plaintiff against defendant, that said Wilson was authorized to collect the proceeds from the "sale of products of

plaintiff and deposit them in the designated depository of plaintiff in the city of Pampa * * * that the said W. A. Wilson was not authorized to cash checks accepted by him in payment for products of plaintiff * * * and had no authority to cash any of such checks or to retain money or cash so collected from sale of products"; "that one Green & Brown was a customer of plaintiff and on or about December 22, 1930, delivered to said W. A. Wilson its check * * * payable to Phillips Pet. Co. or bearer, drawn on First National Bank of Pampa, Texas, for the sum of $1300.10"; that said check was presented for payment by said Wilson, and the cash paid to said Wilson; that said Bank had, prior to said date, been designated as its depository; that said bank was instructed by plaintiff that Wilson had no authority to cash checks payable to appellant, but was instructed to deposit them to the account of plaintiff; that said bank knew when it cashed said check that Wilson had no authority to collect same, but that his authority was limited to indorsing checks payable to appellant for deposit only. In the alternative plaintiff alleged that said check was paid to a person or persons unknown to plaintiff, but with full notice and knowledge that such check was the property of plaintiff, and that Wilson, whose indorsement appeared on the back thereof, had no authority to negotiate same. Plaintiff alleged the wrongful conversion of said check by said bank and prayed for judgment for the face value of same with interest, etc.

The answer of defendant was a general denial, and a special plea in substance that said check was presented to and paid to some party unknown to plaintiff, and it had no notice, actual or constructive, that the check was the property of plaintiff, and that it acquired said check for value before maturity and without any notice of any defect in the title of the parties presenting same for payment.

The trial was before the court, who entered judgment for defendant.

From the findings of fact filed by the trial court we quote the following:

"3. That on December 22, 1930, the firm of Green & Brown sent W. A. Wilson, an employee of the Phillips Petroleum Company, their certain check, reading as follows:

" 'Pampa, Texas, Dec. 22, 1930, No. —,
" 'The First National Bank of Pampa

" 'Pay to the order of Phillips Petroleum Co., or bearer, $1300.10 One Thousand Three Hundred and 10/100 Dollars.
" 'For Nov. acc.     Green & Brown
                    " 'By B. G. Brown.'

"On the reverse of said check appeared the following endorsement: 'Phillips Pet. Co. W. A. Wilson.'

"which said check was given by said Green & Brown to said Phillips Petroleum Company in satisfaction of its account due and owing to Phillips Petroleum Company from said Green & Brown.

"4. I find that a few days thereafter this check was presented by some one unknown to First National Bank of Pampa, defendant, at the window of Teller No. 4 in said Bank.

"5. That at the time of presentation of said check said Bank paid to such party, presenting the same face thereof in money.

"5a. That at the time of the payment of said check said Bank and the party paying the same did not have knowledge that such check was the property of the Phillips Petroleum Company, if it was the property of said Phillips Petroleum Company."

■ The alleged error of the court in excluding a written contract between plaintiff and said Wilson is made the subject of plaintiff's first proposition. Nothing is presented for review under this proposition, because the excluded testimony is not brought forward in any bill of exception found in the record. Obviously we are not able to determine the admissibility of evidence of which we know nothing except the unauthenticated statements concerning same in plaintiff's brief. Mutual Life & Loan Ass'n of America v. Skidmore (Tex. Civ. App.) 50 S.W.(2d) 384; Milliken v. Smoot, 64 Tex. 171; note 41 under article 2237, Vernon's Ann. Civ. St. 1925, for full collation of authorities.

An interesting and exhaustive brief has been filed by plaintiff upon the remaining propositions, all of which relate, in effect, to the alleged insufficiency of the evidence to support the court's judgment. No useful purpose would seem to be served by detailing at great length here all the testimony pro and con upon the controversial issue made by the pleadings. We only mention briefly some of the more important facts. It will be noted that the check in question was payable to plaintiff or bearer.

■■ Any person having such an instrument in his possession "may be presumed to be entitled to receive payment, unless the payer have notice to the contrary, and a payment to such person will be valid although he may be a thief, finder or fraudulent holder." Daniels on Negotiable Instruments (6th Ed.) page 1389; Higley v. Dennis, 40 Tex. Civ. App. 133, 88 S. W. 400; Greneaux v. Wheeler, 6 Tex. 521.

" 'Notice of facts sufficient to put a man of ordinary prudence upon inquiry' has no application to a purchaser of a negotiable instrument before maturity and for value. * * * The circumstances, if any, relating to the fraud relied upon, and of which the purchaser has knowledge, must be such as to authorize the conclusion of bad faith in the purchase sought to be maintained." First National Bank v. Chapman (Tex. Civ. App.)

164 S. W. 900, 902, and authorities there cited.

"The question is now one of good or bad faith and not of diligence or negligence, except so far as the want of caution is material as bearing on the question of good faith and suspicion or knowledge of facts which fall short of bad faith do not amount to notice." 8 C. J. pages 502, 503 and authorities there collated.

■ Applying here these legal principles, we have concluded the facts at least presented an issue, and that plaintiff's evidence is not of such conclusive character as would compel a finding either (1) that the bank acted in bad faith; (2) had notice that the check in question was the property of plaintiff when it was paid; or (3) that the bank violated its contractual obligations with plaintiff. The last two may perhaps be included in the first. Regarding the question of notice to the bank of Wilson's authority, witness Endicott testified for plaintiff as follows: "I do not remember whom I had my conversation with in said bank but I went to the bank, talked with some agent or employee of the bank and told him that we had checked in one W. A. Wilson as our agent at our bulk station there in Pampa and that all checks which were to be received by him payable to the Phillips Petroleum Company were to be deposited in said bank to the credit of the Phillips Petroleum Company and that W. A. Wilson had no authority to personally cash the checks or to deposit them to his own account." Witness Gilham, Assistant Cashier of the Bank, when asked about this purported conversation, testified: "No, sir, don't remember hearing anything about it at all. I think if there had been any such instructions I would have made some memorandum of it." Other employees of the bank in position to have received the Endicott instructions above detailed testified to substantially the same thing. While their testimony is of a somewhat negative character, in that they each say they do not remember the instructions, all of them, we believe, say, in substance, that they would have remembered it because of its important character and they would have made a written memorandum of such a matter.

■ Prior to the selection of defendant bank as its depository, plaintiff wrote defendant a letter, dated August 18, 1928, which contained the following paragraphs:

"We are instructing our agent in your city to make deposits of our collections, to be left in your bank subject to draft drawn through the Amarillo National Bank of Amarillo, Texas. We anticipate leaving some funds in your bank and drawing the drafts about every two weeks. * * *

"We shall be very glad to hear from you in this regard and should you have any objections to the above method of handling, do not hesitate to so advise us."
—to which letter the defendant bank replied, in part:

"We wish to state that the arrangements as set forth in your letter are satisfactory to us and we will try to comply with them.

"We enclose signature card to be signed by parties authorized to draw drafts against the account and return to us for our files."

It is admitted that the signature card sent in did not contain the name of W. A. Wilson. It is inferable from this correspondence that it related solely to the manner of semi-monthly withdrawals of deposits. We do not think that the conclusion is imperatively necessary that it constituted such notice to the bank as would make it liable for the payment of a check payable to bearer, though indorsed by W. A. Wilson, since the indorsement was not necessary to transfer title to the paper. See Hopkins v. Upshur, 20 Tex. 93, 70 Am. Dec. 375; Pope v. Brookshire (Tex. Civ. App.) 236 S. W. 108; 6 Tex. Jur. pages 714 and 279.

■ Plaintiff's first-amended original petition appears to have been filed on November 25, 1932. There is no showing in the record when its original suit was filed or when this controversy between the parties first arose. It appears that in March, 1932, some of the officers of plaintiff got W. A. Wilson in their office and that he admitted that he had cashed this check and used the money. This confession of embezzlement was admitted over the objection of defendant that it was purely hearsay and not binding upon defendant. The trial court expressed a doubt as to its admissibility, but permitted it, since the trial was before the court. It is argued here that this evidence established that Wilson personally cashed the check at defendant bank, which tended to establish notice and flatly contradicted the finding of the court that it was cashed by some unknown person. We do not here expressly decide whether such testimony was admissible. While we are doubtful of its admissibility, we have no doubt that the court under the particular circumstances of this case could totally disregard it, particularly since he was the judge of the credibility of witnesses and the weight to be given to their testimony.

Discussing such testimony, the Supreme Court of Iowa, in an early case, after discussing the purely secondary character of this kind of testimony and the necessity of laying a clear predicate, makes the following observation: "In addition, the court should, under the circumstances of the particular case, be satisfied that there was no probable motive to falsify the fact declared; as where the declaration is made ante litem motam, or at a period so remote as to preclude all sus-

picion that it was manufactured for the occasion." The County of Mahaska v. Ingalls, Ex'r., 16 Iowa, 81.

See, also, 22 C. J., page 232.

Such testimony is claimed to be admissible upon the theory that it is a declaration against pecuniary interest, and where the witness is not available may be introduced. It is dangerous testimony at best and where, as in this case, the statement of an alleged embezzler is introduced as having been made at a time near to, if not actually subsequent to, the claim made against defendant, and considering its rather unusual character, we are not at all doubtful, as before stated, of the right to the court to disbelieve it in its entirety.

Believing that the evidence sufficiently sustains the judgment of the trial court, it is in all things affirmed.

### On Motion for Rehearing.

Appellant correctly contends that all the employees of the bank did not testify that they would have remembered the Endicott instructions "because of its important character and they would have made some written memorandum of such matter." The check in question was paid at the window of teller No. 4, who is shown to be a Mr. Clay. He testified, in part: "Q. Who handled the checks that passed through your cage? A. I handled most of them, and—the two Vicar brothers.

"Q. If you cashed that check then I ask you to state whether or not at the time you cashed it you knew that whoever got the money on it wasn't entitled to receive it, but that it belonged to Phillips Petroleum Company? A. No. I didn't know whose money it was; I judged it was his, by having an 'or bearer' check.

"Q. Did any one purporting to represent the Phillips Petroleum Co. ever come to your window in the bank and tell you that there was any limitation on the power of W. A. Wilson to cash checks or receive money on them, or anything else with reference to his powers? A. Not that I remember of."

The two Vicar brothers, employees of the bank, and who sometimes occupied the cage of teller No. 4, testified substantially the same, but somewhat more strongly. The court, we think, was justified in concluding that such witnesses would have remembered such instructions, owing to their important nature. We are still of the opinion the facts shown in this record were sufficient to raise an issue of fact, which is all that was necessary.

Motion for rehearing overruled.