PEAVY-MOORE LUMBER COMPANY, INCORPORATED, V.
THE FIRST NATIONAL BANK OF BEAUMONT.

No. 7272.  Decided June 7, 1939.
Rehearing overruled July 12, 1939.
(128 S. W., 2d Series, 1158.)

*John H. Benchenstein* and *A. M. Huffman,* of Beaumont, for appellant.

Peavy-Moore Lumber Company having been named in the draft as the beneficiary or owner of the proceeds thereof, the defendant bank held the proceeds in trust for the lumber company when so collected, and said bank was guilty of negligence in failing to handle the proceeds of the draft in accordance with the instruction contained in the body thereof. American Natl. Bank v. Sprague, 14 R. I. 410; Black v. Epstein, 93 Mo. App. 459, 67 S. W. 736; Brison v. Oliver Farm Equipment Co., 61 S. W. (2d) 147.

*Smith, Smith & Boyd,* of Beaumont, for appellee.

The words appearing on the draft with respect to the Peavy-Moore Lumber Company constituted mere memorandum, of which the bank was not required to take notice. The bank was acting only as a collection agency and was only required to obey the instructions of the drawer in connection with the deposit of the proceeds, and having obeyed them by placing the proceeds to his credit its obligation was fulfilled. 6 Tex. Jur. 251; 7 C. J. 674; Steere v. Stockyards Natl. Bank, 266 S. W. 535.

MR. PRESIDING JUDGE SMEDLEY delivered the opinion of the Commission of Appeals, Section B.

The Court of Civil Appeals for the Ninth Supreme Judicial District has certified five questions to this court, pending decision of motion for rehearing filed in that court after its reversal of the district court's judgment and rendition of judgment in favor of appellant.

The facts set out in the certificate are in substance as follows: On August 3, 1935, Long Island Machinery & Equipment Company, Inc., of New York City, New York, hereinafter referred to as Long Island Company, was indebted to appellant, Peavy-Moore Lumber Company, Inc., hereinafter referred to as Peavy-Moore, in the sum of $1894.95. The Long Island Company was engaged in interstate commerce, and Jack Garson, brother of its president, Frank Garson, represented it as a buying and selling agent in southeastern Texas and western

Louisiana; his agency was limited to the extent that his dealings with his principal's customers were subject to ratification by his principal. On the 3rd day of August, 1935, Jack Garson drew and delivered to a teller of The First National Bank of Beaumont (hereinafter referred to as the bank) for collection the following described draft: drawn on a form of customer's draft used by the said bank, dated at Beaumont, Texas, August 3, 1935, payable to the order of The First National Bank of Beaumont, Texas, for the sum of $1,000.00, drawn on Long Island Machinery & Equipment Company, Inc., 25 West 43rd St., New York, New York, signed "Jack Garson." On the face of the draft immediately after the words "One Thousand Dollars," the amount of the draft, and above the name of the drawee and the signature of the drawer, appear in parenthesis the following words typed in capital letters: "For account Peavy-Moore Lbr. Co." The words last quoted are followed by another phrase in parenthesis but not in capital letters: "to apply on account loading rails at Starks, La. and Lunita, La." This draft was forwarded by the bank in due course, was presented to the Long Island Company and duly paid by it, and the proceeds were remitted to the bank. Instead of crediting the proceeds of the draft to Peavy-Moore the bank paid the proceeds to Jack Garson under the following collection receipt given by him to the teller at the time the draft was presented for collection:

> "FIRST NATIONAL BANK
> BEAUMONT, TEXAS          8/3/35
> ENTERED FOR COLLECTION
>
> By Jack Garson
>   c/o Hotel Bmt.
> Item Draft dated 8/3 Due S          $1,000.00
> Payer
> Maker  Self on Long Island Mach. & Equip. Co.,
>         N. Y.
> Remarks: . . . . . . . . . . .
> Apply Proceeds . . . . . . . . . C. C. Hold
>                         Signature of Customer
>                         JACK GARSON"

The words "apply proceeds . . . C. C. Hold" meant for the bank to convert the proceeds into a cashier's check payable to Jack Garson to be held and delivered to him. Payment was made to Garson in that manner. Garson cashed the cashier's check, and was given part of its proceeds in cash and the balance in a second's cashier's check payable to his order. Peavy-Moore

was not a customer of the bank and carried no account with it. The bank knew nothing of the business relations between Peavy-Moore and the Long Island Company, nor that the Long Island Company was indebted to Peavy-Moore, except as advised of that fact by the wording of the draft copied above. On this point, in accepting the draft, the teller read all the language of the draft and, on the trial of this case, had an independent recollection of the contents of the draft. After the bank paid the amount of the draft to Jack Garson Peavy-Moore received from the Long Island Company a check for $894.90, endorsed in full settlement of its account, which Peavy-Moore refused to accept. In the negotiations relating to this check Peavy-Moore learned for the first time that Jack Garson had drawn the draft and had converted the proceeds to his own use. When advised of these facts, at first Peavy-Moore refused to recognize that the payment was made for its benefit, but later it took the position that the Long Island Company had paid the bank the amount of the draft for its account, and that the bank had its money. Thereupon on the 6th day of December, 1935, Peavy-Moore filed this suit against the bank on the theory that the draft was drawn for its account, that the bank so accepted the draft and thereby became bound to collect it and to hold the proceeds subject to its order; that the proceeds constituted a trust fund for its benefit and, by paying the money to Jack Garson, the bank breached its trust and became liable to pay it the sum of $1,000.00, with interest at 6 per cent per annum from the 3rd day of August, 1935, for all of which it prayed judgment. The bank answered by demurrers, general denial, and special pleas to the effect that the language of the draft " (FOR ACCOUNT PEAVY MOORE LBR. CO.) (to apply on account loading rails at Starks, La., and Lunita, La.) " was "merely a memorandum for the convenience of parties other than the bank," and not an instruction to the bank directing that the funds be paid to Peavy-Moore, and further that "the bank was required as a matter of law to obey the instructions of the drawer of said draft as to disposition of the proceeds," referring to the collection receipt, the written memorandum copied above. On trial before the court without a jury judgment was entered in favor of the bank, supported by conclusions of fact and law, which were duly excepted to by Peavy-Moore.

The following questions are certified:

"QUESTION NO. 1. In accepting the draft for collection in the form drawn, did The First National Bank make itself a

trustee to hold the funds when collected for the account of Peavy-Moore Lumber Company?

"QUESTION NO. 2. When the draft in issue was presented for collection to Long Island Machinery & Equipment Company, Inc., at its office at 25 West 43rd Street, New York, N. Y., and there paid, and when the proceeds of the collection were returned to The First National Bank of Beaumont, at Beaumont, Texas, did it hold the proceeds of the collection as trustee to pay the funds to the Peavy-Moore Lumber Company?

"QUESTION NO. 3. Did the language '(FOR ACCOUNT PEAVY-MOORE LBR. CO) (to apply on account loading rails at Starks, La., and Lunita, La.)', appearing as and where it did on the draft, amount only to a 'memorandum' for the benefit of Long Island Machinery & Equipment Company, Inc., and its agent Jack Garson, or did it constitute a direction to The First National Bank for application of the funds when collected?

"QUESTION NO. 4. If you should answer that the language of the draft certified by Question No. 3 amounted merely to 'a memorandum', then, on the peculiar facts of this case, was The First National Bank liable to Peavy-Moore for the $1,000.00, as held in the majority opinion?

"QUESTION NO. 5. After Jack Garson wrote the draft in issue and delivered it to The First National Bank for collection, or in connection with the delivery of the draft, he executed and filed with the bank the following written instructions:

'FIRST NATIONAL BANK

BEAUMONT, TEXAS       8/3/35

ENTERED FOR COLLECTION

By Jack Garson
   c/o Hotel Bmt.
Item Draft dated 8/3 Due S        $1,000.00
Payer
Maker Self on Long Island Mach. & Equip. Co.,
            N. Y.
Remarks: . . . .
Apply Proceeds . . . . . . . . . . C. C. Hold
                   Signature of Customer
                     JACK GARSON';

having accepted this written instrument, was The First National Bank bound to pay, or did it have the legal right to pay the proceeds of the draft when collected to Jack Garson, as it in fact did pay such proceeds to him, notwithstanding the language of the draft certified by Question No. 3?"

■ The certificate contains the statement that all of the facts

brought forward in the statement of facts are certified. However, since the jurisdiction of the Supreme Court does not extend to questions of fact, the answers to the certified questions must be based upon the facts as found and certified by the Court of Civil Appeals, and which have been set out above, and not upon facts which might be gathered from the statement of facts. Anderson, Clayton & Company v. State of Texas, 122 Texas 530, 62 S. W. (2d) 107; Employers' Liability Assurance Corporation v. Young County Lumber Co., 122 Texas 647, 64 S. W. (2d) 339; Ramin v. Cosio, 124 Texas 471, 79 S. W. (2d) 617.

■ As is apparent from the contents of the certificate from the Court of Civil Appeals, it is necessary first to determine whether the words appearing on the face of the draft in parenthesis, and particularly the words "For account Peavy-Moore Lbr. Co.," constitute a part of the instrument itself or merely a memorandum written thereon as such for the convenience of one or more of the parties. The general rule, supported by many authorities, is that marginal notations or memoranda placed on a note or bill at the time of its execution, with the intention of making them a part of the contract, become part of the instrument and are to be given the same effect as if they were inserted in its body. Bryson v. Oliver Farm Equipment Sales Co., 61 S. W. (2d) 147; Meade v. Sandidge, 9 Texas Civ. App., 360, 30 S. W. 245 (application for writ of error refused). Farmers' Bank of Nashville v. Johnson, King & Co., 134 Ga. 486, 68 S. E. 85, 30 L. R.. A. (N. S.) 697; Scholbe v. Schuchardt, 292 Ill. 529, 127 N. E. 169, 13 A. L. R. 247, and Note pp. 252 and following; 7 Amer. Jur. pp. 816-820, Secs. 53-60, 10 C. J. S. pp. 480-482, Sec. 44a.

Associate Justice Stephens, writing the opinion in Meade v. Sandidge, supra, quoted with approval the statement of a well-known writer on commercial paper that "the weight of authority in this country, as well as in England, is in favor of recognizing as part of the instrument, and as controlling its operation, every memorandum which can affect its character, whether it is written on the face or on the back of the paper." In our opinion it is clearly apparent, from the manner in which the words with reference to Peavy-Moore were placed on the face of the draft and from the facts certified, that the drawer intended and that both the payee and drawee must have understood such words to be an integral part of the draft. The drawee was indebted to Peavy-Moore. The drawer Garson was the drawee's agent, but according to the certificate his agency

was limited to the extent that his dealings with his principal's customers were subject to ratification by his principal. The draft was drawn and delivered to The First National Bank of Beaumont for the purpose of accomplishing the collection of the debt due by the drawee to Peavy-Moore. The proceeds of the draft did not belong to Garson and it does not appear that he had authority to collect or receive them. After making the draft payable to the bank, which was merely the collection agency, he wrote into the face of it in capital letters the words "FOR ACCOUNT PEAVY-MOORE LBR. CO," thus making it plainly appear on and in the instrument that the proceeds belonged to Peavy-Moore Lumber Company and that the collection was to be made for its account.

■ How and to what extent are the rights and obligations of the parties affected by the directions or instructions in the draft that the collection be made for the account of Peavy-Moore? The bank was under no obligation to accept the draft for collection but, having done so, it owed the duty to collect it and to dispose of the proceeds in accordance with the instructions given and became liable for loss caused by its failure to follow such instructions. Jockusch v. Towsey, 51 Texas 129; First National Bank of Coleman v. First National Bank of Brownwood (Com. App.) 278 S. W. 188; Farmers' Bank of Nashville v. Johnson, King & Co., 134 Ga. 486, 68 S. E. 85, 30 L. R. A. (N. S.) 697; American Exchange National Bank v. Loretta Gold & Silver Mining Co., 165 Ill. 103, 105, 46 N. E. 202, 56 Am. St. Rep. 233; Michie on Banks and Banking, Vol. 6, pp. 81-82, Sec. 53.

■ Ordinarily, one who delivers commercial paper to a bank for collection is the owner of the paper and one who draws a draft payable to a bank and delivers it to the bank for the purpose of making collection from the drawee is the owner of the debt. Either transaction creates the relation of principal and agent, the bank becoming in the one the agent of the owner of the paper and in the other the agent of the drawer, to make the collection. Heid Bros. v. Commercial National Bank (Com. App.) 240 S. W. 908; 24 A. L. R. 904; First National Bank of Coleman v. First National Bank of Brownwood (Com. App.) 278 S. W. 188; Anderson v. National Bank of Boyertown, 90 Ky. 431, 14 S. W. 411, 9 L. R. A. 553; 9 C. J. S. p. 466, Sec. 218; Michie on Banks and Banking; Vol. 6, pp. 19-29, Sec. 16. In such cases, the principal gives, as is his right, instructions to the bank his agent, with reference to

the manner of making the collection and the disposition of the proceeds.

The instant case is peculiar, however, in that Garson who drew the draft and delivered it to the bank for collection was not the owner of the debt owed by the drawee and was not entitled to the proceeds of the draft. He merely drew the draft as a means of bringing about payment by the drawee of a debt that it owed Peavy-Moore. The draft was drawn for the benefit of Peavy-Moore, the face of the draft showing the purpose for which it was drawn and directing that it be collected for the account of Peavy-Moore.

■ Under such state of facts the execution of the draft and its delivery to the bank for collection, in our opinion, made the bank the agent of the Peavy-Moore Company, even though that company had nothing to do with the execution or delivery of the draft and did not know that it had been drawn. This State is committed to the rule that a correspondent bank to which another bank has sent a customer's negotiable instrument for collection is the agent of the owner of the paper and is liable directly to him for loss resulting from its negligence in making the collection or its failure to follow the instructions given as to the manner of collecting the paper or as to disposition of the proceeds. Tillman County Bank v. Behringer, 113 Texas 415, 257 S. W. 206; 36 A. L. R. 1302; Citizens National Bank of Abilene v. Overstreet, 77 S. W. (2d) 250 (application for writ of error refused). The Court expressed the opinion in Tillman County Bank v. Behringer that in such case there is no lack of privity between the collecting bank and the owner of the paper, because the collecting bank is aware that it has for collection the owner's paper "and accepts the duty of that service for the benefit of and on account of said owner." The same principle is applicable in the instant case. The bank was advised by the wording of the draft that the debt for the collection of which the draft was drawn belonged to Peavy-Moore. Furthermore, as shown by the certificate, the teller of the bank read all of the language of the draft when he accepted it for collection and had at the time of the trial an independent recollection of the contents of the draft. The bank, with this knowledge, undertook to make the collection for the benefit of and on account of Peavy-Moore.

■ After the draft was paid and the proceeds remitted to it, the Beaumont bank had in its possession funds which belonged to Peavy-Moore and which it had been instructed to collect for the account of Peavy-Moore. The relation then existing

between the bank and Peavy-Moore was substantially the same as the relation between a bank and one in whose name a deposit has been made by another. In such case the bank becomes the debtor of the person for whom and in whose name the deposit is made, and the money cannot be withdrawn by him who made the deposit unless it is proven that he, rather than the person in whose name the deposit was made, is the true owner. Cozart v. Western National Bank of Fort Worth, 194 S. W. 644 (application for writ of error refused) ; American National Bank v. Funk, 68 Okla. 169, 172 Pac. 1078, L. R. A. 1918F 1137; 7 Amer. Jur. p. 363, Sec. 509; Michie on Banks and Banking, Vol. 5 pp. 168-176, Secs. 79-83.

The instant case is not comparable with those in which it is held that, when a deposit of money belonging to a principal has rightfully been made by an agent and entered in the agent's name, the agent has the right, which the bank is bound to recognize, to draw it out by his personal check. Interstate National Bank v. Claxton, 97 Texas 569, 80 S. W. 604, 65 L. R. A. 820, 104 Am. St. Rep., 885. The important difference between this case and such cases are that here Garson was without authority to collect the debt and deposit the proceeds, or cause them to be deposited, to his own account, and that the draft drawn by Garson contained instructions to collect for the account of Peavy-Moore. These facts bring this case under the principle announced by Associate Justice Wheeler in Commercial & Agricultural Bank v. Jones, 18 Texas 811, making the bank liable to the true owner of a deposit or of the proceeds of a draft, when, knowing such true ownership and that the money is intended for the account of the owner, the bank permits the deposit to be withdrawn by or makes payment of the proceeds of the draft to, another who has no authority to withdraw the deposit or to receive the proceeds.

In Bank of Sherman v. Weiss, 67 Texas 331, 335, 3 S. W. 299, the draft collected bore endorsement similar to the words written on the face of the draft drawn by Garson in the instant case. The concluding sentence of the opinion in that case, written by Associate Justice Gaines, states the principle which we think is controlling in answering the questions which have been certified by the Court of Civil Appeals. It is: "The proposition which determines the rights of the parties here is, that appellee collected appellant's money, knowing it to be such, and must be held to have received it for appellant's use and benefit."

Other authorities support our conclusion that the appellee

bank, by accepting for collection the draft payable to its order for the account of Peavy-Moore, undertook to collect the draft and to account to Peavy-Moore for its proceeds and became liable for breach of the obligation so assumed. First National Bank of Coleman v. First National Bank of Brownwood (Com. App.) 278 S. W. 188; Wisconsin General Finance Corporation v. Park Savings Bank, 208 Wis. 437, 243 N. W. 475; American Exchange National Bank v. Loretta Gold & Silver Mining Co., 165 Ill. 105, 46 N. E. 202, 56 A. S. R. 233; Maine Belting Co. v. Corn Exchange National Bank, 325 Pa. St. 168, 188 Atl. 865; 9 C. J. S. p. 598, Sec. 287.

■ Appellee insists that since it acted only as collection medium at the instance of Garson, who drew the draft, it was required to obey the instructions given by him, as evidenced by the collection receipt, to convert the proceeds of the draft into a cashier's check to be held and delivered to him, and that when it obeyed such instructions it discharged the obligation assumed in its acceptance of the draft. Most of the authorities cied in support of this contention are cases in which notations made on checks were clearly intended to constitute mere memoranda for the convenience of the drawers. Others are cases holding that ordinarily when the owner of commercial paper delivers it to a bank for collection, or when one draws a draft payable to a bank and delivers it to the bank for collection, the bank becomes the agent of the owner of the paper or of the drawer and must follow the instructions of the owner or the drawer. In none of such cases does the draft bear on its face, as here, the statement that it is drawn for the account of another than the drawer. It is true, of course, that when the bank is not advised by the face of the draft or otherwise that the debt for the payment of which a draft payable to it is drawn belongs to one other than the drawer, instructions given by the drawer for disposition of the proceeds when collected must be followed by the bank.

Here Garson gave contradictory instructions. In the face of the draft he directed that the collection be made for the account of Peavy-Moore. In the receipt he directed that it be made for himself. If the collection receipt were not contradictory of the draft, the two instruments, made as a part of one transaction, would be construed together. Stubblefield v. Cooper, 37 S. W. (2d) 818; 10 C. J. S. p. 482, Sec. 44b. A contemporaneous instrument or agreement, the provisions of which are repugnant to a note or draft, will not be construed as a part of the note or draft. When there is such repugnancy

effect will be given to the provisions of the note or draft, which will be regarded as constituting the primary contract. Ferris v. Johnson, 136 Mich. 227, 98 N. W. 1014; 10 C. J. S. p. 484, Sec. 44b.

The bank and Garson were not the only parties to the transaction evidence by the execution of the draft and its transmission for collection. Garson drew the draft and the bank accepted it to be forwarded and presented to the drawee for payment of the debt owed by the drawee to Peavy-Moore. The drawee in paying the draft had the right to rely upon the statement in the face of the draft that it was drawn for the account of Peavy-Moore and in payment of a debt that it owed that company. It would be manifestly unjust to permit the bank, by reason of instructions in its hands, contrary to those written in the draft and of which the drawee when it made payment had no knowledge, to pay the proceeds to another than Peavy-Moore, for whose account the draft, as shown by its face, was drawn and for whose account it was paid.

A different question would be presented if Garson had been given either express or apparent authority by Long Island Machinery & Equipment Company, the drawee, to draw the draft upon it and to receive the proceeds for payment by him to Peavy-Moore.

The first two of the questions certified use the word "trustee" in making inquiry as to the relation and obligation of the bank to Peavy-Moore. Under the facts set out in the certificate and in view of the conclusions hereinbefore expressed, it is unnecessary to determine whether the bank became trustee or debtor after it collected the draft. In either capacity its obligation was to make payment to Peavy-Moore, having accepted the draft for collection for the account of that company.

We answer the several certified questions as follows:

No. 1 and No. 2: In accepting the draft for collection in the form drawn The First National Bank of Beaumont undertook to collect it for the account of Peavy-Moore Lumber Company and became liable to that company for failure to account to it for the proceeds of the draft when collected.

No. 3: The language "(FOR ACCOUNT PEAVY-MOORE LBR. CO.) (to apply on account loading rails at Starks, La. and Lunita, La.)," appearing in the draft, did not amount merely to a memorandum for the benefit of Long Island Machinery & Equipment Company, Inc., and its agent, Jack Garson, but

constituted a direction to The First National Bank for the application of the funds when collected.

No. 5: Under the facts certified and notwithstanding Garson's execution and the bank's acceptance of the collection receipt, The First National Bank of Beaumont was neither bound, nor did it have the legal right, to pay the proceeds of the draft to Jack Garson.

The answer to Question No. 3 makes it unnecessary to answer Question No. 4.

Opinion adopted by the Supreme Court, June 7, 1939.

Rehearing overruled July 12, 1939.