**VICKERY v. REPUBLIC NAT. BANK & TRUST CO.**

No. 13376.

Court of Civil Appeals of Texas. Dallas.
April 9, 1943.

Rehearing Denied May 7, 1943.

D. A. Frank and D. A. Frank, Jr., both of Dallas, for appellant.

Eugene DeBogory, of Dallas, for appellee.

YOUNG, Justice.

Mrs. Bernice Vickery, a feme sole, sued appellee Bank for an alleged misappropriation of bonds that had been placed by her in a safety deposit box of said institution; and this appeal has followed a trial and defendant's judgment. Material facts preceding the litigation must first be stated.

Appellant (plaintiff below) married C. C. Legerton on January 15, 1938, and later, on January 24, the two, under the assumed names of Frank Olin Sanders and Adele Sanders, leased from defendant lock box No. A2357, the written contract of rental providing in part: "It is agreed that each (or either) of the undersigned is the owner of the present and future contents of said box, * * *." In this box were placed the valuables of plaintiff, being also available for storage use by the husband. Among the securities placed therein by

plaintiff were those in suit, viz: One 5% American Telegraph & Telephone Company bond, due February 1, 1937, for $1,000, and two Kingdom of Norway gold bonds, due September 5, 1937, for $1,000 each; all without interest after maturity and payable to bearer.

Plaintiff used the name of Sanders in renting the deposit box because of a threatened suit by a Mrs. Johnson for alienation of affections; and, about the same time, she executed deeds to Legerton of her realty. Testifying by deposition at the trial, however, the latter stated that the deed transfers were also in consummation of a prenuptial agreement whereby each party should have a half interest in the other's property, both real and personal.

The bonds above described, admittedly a part of plaintiff's separate estate before this marriage, were payable at New York City, and had previously been called for payment. On January 27, 1938, Legerton presented them to the Bank for collection, and was given a descriptive receipt, reciting on its face: "Received for collection only for account of C. C. Legerton." Plaintiff neither endorsed the securities, nor had any knowledge of above transaction. Defendant promptly forwarded the bonds to its New York correspondent, where they were paid, the proceeds remitted to defendant, and funds in settlement thereof delivered to Legerton in cashier's checks, less the sum of $1.30 for expenses incurred in handling them; the net amount received being $3,098.70. At no time had Legerton ever been a customer or depositor of the Bank.

This safety box continued in the name of Sanders until June, when it was changed to Legerton, plaintiff and husband still being carried as cotenants and cosigners, each having access thereto. Marital difficulties then ensued and in September, 1938, a new rental contract was made by plaintiff alone for another box, to which all contents of the first box were transferred. In this new arrangement, plaintiff signed a form of required receipt, viz: "I hereby certify that all of the property stored in Box No. A2357 has been safely withdrawn and the said box is hereby surrendered." Before the date last mentioned, the evidence shows that plaintiff and Legerton visited the box together and separately; also that when the first box was rented in January, both were present and signed papers necessary for joint and several right of entry.

In the meantime, plaintiff and Legerton had separated, the latter going to California where he still resides. Plaintiff discovered the loss of these bonds in January, 1939, and after several months' investigation, gained knowledge of the facts above related, under which Legerton had previously cashed the securities and appropriated their proceeds to his own use. Plaintiff made strenuous effort to secure restitution from Legerton, then demanded the bonds, or their value, of defendant, and, on its refusal, the present suit was filed.

No findings or conclusions were requested by either party after judgment, and the points of appeal are, in substance: (1) Title to past due bonds payable to bearer does not pass by delivery, but the purchaser takes same subject to the rights of the real owner; (2) a married woman owning past due bearer bonds is entitled to trace them and recover their value from a bank which has collected the proceeds and wrongfully paid same over to a third person; (3) a bank taking past due bonds, not in due course, is put upon inquiry and notice of the rightful ownership of same, and pays the proceeds thereof to a third party at its own peril; (4) the defense of agency of third party in collection of proceeds of past due bonds is not available to the bank when such bonds are the property of a married woman; (5) appellant's husband was powerless to dispose of bonds, her separate estate, in such way as to deprive her thereof, the statute Vernon's Ann.Civ.St. Art. 4614, providing that joint signature of husband and wife shall be necessary to a transfer of stocks and bonds belonging to her.

■ Appellant assumes that the earlier transaction between defendant and Legerton was one concerning the transfer of interest or title in and to these bonds. This is manifest from her propositions just stated. The statute, Art. 4614, is invoked; also Texas Banking & Ins. Co. v. Turnley, 61 Tex. 365, is presented as a controlling authority in plaintiff's favor. In the case just cited, Turnley had deposited with the Bank, as collateral, a bearer bond, separate property of the wife, and the pledgee was asserting ownership by reason of cash advances made to Turnley after the bond's maturity. That the instant situation is

wholly dissimilar to Turnley's case is quite evident, for the Republic Bank never claimed nor attempted to acquire any right, title or interest in these bonds. Defendant's authority was limited to their collection, and if the bonds had not been matured, it could not even have performed that function. "Commercial paper, deposited in a bank for collection, remains the property of the depositor, and the bank is merely his agent to collect it. After collection, the relation becomes that of debtor and creditor. * * *" Morse on Banks and Banking, Vol. 1, 6th Ed., p. 600; Am. Jur., Banks, § 448, p. 319; 9 C.J.S., Banks and Banking, § 218, p. 466; Peavy-Moore Lumber Co. v. First Nat. Bank, 133 Tex. 467, 128 S.W.2d 1158, 125 A.L.R. 1185.

■ Defendant had no notice of plaintiff's interest in the bonds prior to their collection, except that imputed from their matured status; and on the undisputed facts of this record, we conclude that the trial court correctly applied the following rule from C.J.S., Vol. 9, Banks and Banking, § 248, p. 517: "In the absence of actual notice that the proceeds of paper belong to some other person, the bank is justified in paying over such proceeds to the person by whom the paper was deposited for collection. However, where the bank has notice that paper deposited for collection belongs to another, it is liable to the true owner for the proceeds, and if it misappropriates the proceeds of a collection with notice that they do not belong to the depositor, it becomes a trustee ex maleficio." Citing Peavy-Moore Lumber Co. v. Bank, supra. The foregoing rule is applicable although presentment for payment is not made until after the instrument is due. 8 Am.Jur., Bills & Notes, § 848, p. 490. Similarly, it is stated in 8 C.J., p. 602, par. 838: "Where a note is payable to bearer, or is endorsed in blank, its actual possession is prima facie evidence of the possessor's authority to receive payment thereon, and the note will be discharged by payment to him in good faith unless the maker has notice to the contrary; and hence payment to a thief or to a finder of such note in his actual possession is binding." 10 C.J.S., Bills and Notes, § 460. And in Phillips Petroleum

Co. v. First Nat. Bank of Pampa, Tex.Civ. App., 64 S.W.2d 1057, 1058, we find: "Any person having such an instrument in his possession 'may be presumed to be entitled to receive payment, unless the payer have notice to the contrary, and a payment to such person will be valid although he may be a thief, finder or fraudulent holder.' Daniels on Negotiable Instruments, 6th Ed., page 1389; Higley v. Dennis, 40 Tex. Civ.App. 133, 88 S.W. 400; Greneaux v. Wheeler, 6 Tex. [515], 521." See, also, 6 Tex.Jur., Bills and Notes, § 174, p. 812; Zollmann on Banks and Banking, Vol. 8, pp. 228, 467, §§ 5429, 5705.

■ Furthermore, the defensive plea of estoppel appears fully developed in uncontroverted testimony. This equitable doctrine applies to overt acts of a married woman when positive law is not contravened. 23 Tex.Jur., Estoppel, Ch. 17, pp. 310–314. In renting the safety box, the lease signed by plaintiff and her then husband included this provision: "It is agreed that each (or either) of the undersigned is the owner of the present and future contents of said box." Clearly, plaintiff is bound by the legal effect of said representation, for, to third parties without notice, Legerton thereby appeared fully empowered to dispose of specific property; Gillette v. Houston Nat. Bank., Tex.Civ. App., 139 S.W.2d 646. The following statement from 30 C.J., pp. 830, 831, has been generally approved in other jurisdictions: "By permitting her husband to hold title to or deal with her separate property as his own, or in any manner holding out to the world that he is the owner thereto, the wife will be estopped to claim it as against persons purchasing from the husband in good faith or extending credit to him in reliance upon his apparent ownership, * * *." For Texas cases in point, see Dorsey v. Kemble, Tex.Civ.App., 224 S.W. 217, and authorities there cited; also 19 Am.Jur., Estoppel, § 68, pp. 696, 697.

With all due regard for appellant's claim, we believe that the losses in question were consequent upon her own affirmative acts and misplaced confidence; and the judgment to such effect must be affirmed.

Affirmed.